# IN THE SUPREME COURT OF IOWA

No. 88 / 05-2127

Filed October 12, 2007

**TYSON FOODS, INC.**,

Appellant,

vs.

**MIGDALIA HEDLUND**,

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

Employer seeks further review of a case involving application of judicial estoppel. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED.**

Coreen K. Sweeney and Scott A. Sundstrom of Nyemaster, Goode, West, Hansell & O'Brien, P.C., Des Moines, for appellant.

Randall P. Schueller of Hopkins & Huebner, P.C., Des Moines, for appellee.

**CADY, Justice.**

In this appeal we must decide whether an employer may contest liability for an injury to its employee after admitting liability for the injury at a previous alternate medical care hearing. The workers' compensation commissioner determined the employer was unable to deny liability based on the doctrine of issue preclusion. The district court affirmed. The court of appeals also affirmed, but held the liability issue was not res judicata. Instead, the court of appeals applied the doctrine of judicial estoppel and held the employer was estopped from contesting liability. On further review, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand to the commissioner for further proceedings.

## I.  Background Facts and Proceedings.

Migdalia Hedlund (Hedlund) was employed by Tyson Foods, Inc. (Tyson Foods). On January 10, 2005, Hedlund filed a workers' compensation claim asserting she sustained a work-related injury to her bilateral hands, wrists, elbows, arms, right shoulder, and neck on February 1, 2004.

Hedlund's treating physician was Dr. Timothy Schurman. On November 8, 2004, Dr. Schurman diagnosed Hedlund with "underlying inflammatory problems, possibly rheumatoid arthritis." Dr. Schurman also recommended Hedlund be seen by a rheumatologist.

On January 4, 2005, Tyson Foods submitted a series of written questions to Dr. Schurman. Tyson Foods asked:

> 1.  "Are you able to state within a reasonable degree of medical certainty that the diagnosis of rheumatoid arthritis was caused by her work activities at Tyson Foods, Inc.?"

2. "Your 11/08/04 note indicates 'possible RA aggravated by the work place'. Did the aggravation physically change the underlying condition?"

3. "Will further treatment be indicated for any work caused injury?"

Dr. Schurman responded in the negative to all three questions.

On February 11, 2005, Dr. Schurman diagnosed Hedlund with "underlying inflammatory arthritis, which has been materially aggravated by the work place." In a February 18, 2005 letter, Dr. Schurman indicated Hedlund's condition was aggravated by her work at Tyson Foods.

Tyson Foods considered Dr. Schurman's opinions to be conflicting and requested an independent medical examination of Hedlund as allowed by Iowa Code section 85.39 (2005).[1] An appointment with Dr. Delwin Quenzer was scheduled for this purpose. Hedlund, however, believed the appointment with Dr. Quenzer was an attempt to change her treating physician.

As a result, Hedlund filed a petition with the workers' compensation commissioner for alternate medical care on April 14, 2005 (April petition). At the hearing on the April petition, Tyson Foods clarified that the appointment with Dr. Quenzer was only for the purpose of an Iowa Code section 85.39 independent medical evaluation. Consequently, a deputy commissioner dismissed the petition. In a written dismissal order, the deputy found, "[a]s a result of claimant setting forth that the basis for the application for alternate medical care no longer exists, there is, therefore, no issue to be resolved." The deputy commissioner also

---

[1]Section 85.39 provides: "After an injury, the employee, if requested by the employer, shall submit for examination at some reasonable time and place and as often as reasonably requested . . . ." Iowa Code § 85.39 (2005).

indicated in the order that, "[d]uring the course of the [April alternate medical care] hearing, [Tyson Foods] was asked whether liability was accepted on this claim and the attorney for [Tyson Foods] stated it was."

Tyson Foods was subsequently not able to reschedule the independent medical examination with Dr. Quenzer and was unable to retain a rheumatologist willing to see Hedlund. Instead, Tyson Foods scheduled the independent medical examination with Dr. Donna Bahls.

On June 6, 2005, Hedlund filed a second petition for alternate medical care (June petition). Hedlund claimed Tyson Foods refused to provide her with the care of a rheumatologist. Tyson Foods filed an answer to the petition, but did not indicate it disputed liability of the claim.

On June 13, 2005, Tyson Foods received the results of Dr. Bahls' independent medical examination of Hedlund. Based on those results, Tyson Foods filed an amended answer to the second petition for alternate medical care, indicating it was disputing liability.

On June 21, 2005, a deputy workers' compensation commissioner held a hearing on the second petition for alternate care. Tyson Foods sought to amend its answer to specifically deny liability based on new medical information obtained from Dr. Bahls. The deputy commissioner determined Tyson Foods was precluded under the doctrine of res judicata from contesting liability for the injury after it admitted liability in the first alternate medical care proceeding. Pursuant to a delegation of authority by the workers' compensation commissioner, the deputy commissioner's decision constituted final agency action.[2]

---

[2]*See* Iowa Code § 86.3 (allowing a deputy commissioner the power to issue a final agency decision pursuant to a written delegation of authority by the workers' compensation commissioner).

Consequently, Tyson Foods filed a petition for judicial review with the district court. On December 6, 2005, the district court likewise found the issue of liability to be res judicata.

Tyson Foods appealed, and we transferred the case to the court of appeals. The court of appeals held the doctrine of issue preclusion did not apply because the issue was not actually raised and litigated in the first alternate medical care proceeding. However, it concluded Tyson Foods was judicially estopped from denying liability for Hedlund's injury after it had conceded the issue at the April alternate medical care hearing.

## II. Standard of Review.

"We apply the standards of Iowa Code section 17A.19 in our review of workers' compensation decisions." *R.R. Donnelly & Sons v. Barnett*, 670 N.W.2d 190, 195 (Iowa 2003). "On our review of the district court's decision, we apply the standards of chapter 17A to determine if our conclusions are the same as those of the district court. If so, we affirm; otherwise, we reverse or otherwise modify." *Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 571 (Iowa 2006) (citing *Hill v. Fleetguard*, 705 N.W.2d 665, 669 (Iowa 2005)).

In this case, the district court relied on the doctrine of res judicata, as did the deputy commissioner, to support its conclusion that Tyson Foods was precluded from contesting liability. The court of appeals affirmed, but relied on the doctrine of judicial estoppel. As an "equitable doctrine invoked by a court at its discretion,"[3] the appropriate standard

---

[3]*New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 1815, 149 L. Ed. 2d 968, 977 (2001).

of appellate review would normally be for an abuse of discretion.[4] However, on further review from a decision of the court of appeals, we nevertheless review the decision of the district court. Therefore, we review, as did the court of appeals, for corrections of errors at law. *IBP, Inc. v. Harpole*, 621 N.W.2d 410, 414 (Iowa 2001).

## III. Issue Preclusion.

We first consider whether the district court correctly applied the doctrine of res judicata or issue preclusion. One important element of issue preclusion is that the issue to be precluded must have been "raised and litigated" in the previous proceeding. *Haverly*, 727 N.W.2d at 572. Because the liability issue was admitted in the first proceeding, the issue was not actually raised and litigated. *Id.* Consequently, the district court erred by holding that Tyson Foods was precluded from contesting liability based on issue preclusion.

## IV. Judicial Estoppel.

**A. General Principles.** We next consider whether the decision of the district court can be upheld under the doctrine of judicial estoppel. Although this theory was not raised or argued before the district court, we have previously stated: "[B]ecause judicial estoppel is intended to protect the integrity of the fact-finding process by administrative agencies and courts, the issue may properly be raised by courts, even at the appellate stage, on their own motion." *Id.* at 573.

---

[4]"The mainstream of American jurisprudence," including a majority of the federal circuit courts of appeal, agrees. *See Middleton v. Caterpillar Indus., Inc.*, ___ So. 2d ___ (Ala. 2007) (Parker, J., concurring) ("A survey of opinions from other jurisdictions indicates that Alabama would join the mainstream of American jurisprudence in adopting an exceeding-discretion standard in matters involving judicial estoppel."); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1046 (8th Cir. 2006) ("A majority of our sister circuits that have addressed the issue apply the abuse of discretion standard.").

We first engaged in a comprehensive discussion of the doctrine of judicial estoppel in *Vennerberg Farms, Inc. v. IGF Insurance Co.*, 405 N.W.2d 810 (Iowa 1987). *Id.* at 814 (observing that "[t]he rule has been sparingly applied in other jurisdictions and only alluded to in our own"). There, we observed that judicial estoppel is a "commonsense doctrine" that "prohibits a party who has successfully and unequivocally asserted a position in one proceeding from asserting an inconsistent position in a subsequent proceeding." *Id.* Moreover, it is "designed to protect the integrity of the judicial process." *Id.* It applies to administrative proceedings as well as court proceedings. *Haverly*, 727 N.W.2d at 573–74. The doctrine

> addresses the incongruity of allowing a party to assert a position in one tribunal and the opposite in another, thereby creating the perception that at least one court has been misled.

*Vennerberg Farms*, 405 N.W.2d at 814. Yet, as the United States Supreme Court has observed, " '[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle.' " *New Hampshire*, 532 U.S. at 750, 121 S. Ct. at 1815, 149 L. Ed. 2d at 978 (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982)). We have likewise been flexible in our past application of the doctrine and view its flexible parameters as a strength in its ability to achieve its goal.[5]

---

[5]For example, we have only irregularly required an intent to mislead the court by adoption of the inconsistent positions. *Compare Roach v. Crouch*, 524 N.W.2d 400, 403 (Iowa 1994) (stating "application of the doctrine requires proof of an intentional attempt to mislead the court with the inconsistency"); *Graber v. Iowa Dist. Ct.*, 410 N.W.2d 224, 228 (Iowa 1987) (stating "an intentional attempt to mislead the court with the inconsistency must be shown"); *Vennerberg Farms*, 405 N.W.2d at 814 (basing our holding in part on a conclusion that "there is no evidence that Vennerberg misled the court" in the first proceeding), *with Haverly*, 727 N.W.2d at 573–75 (estopping a party from advancing an inconsistent position, but not requiring intent to mislead the court);

Nonetheless, we have often affirmed

> [a] fundamental feature of the doctrine is the successful assertion of the inconsistent position in a prior action. Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent, misleading results exists.

*Vennerberg Farms*, 405 N.W.2d at 814; *accord Haverly*, 727 N.W.2d at 573; *Wilson*, 666 N.W.2d at 166; *Jacobs*, 607 N.W.2d at 687; *Roach*, 524 N.W.2d at 403; *Graber*, 410 N.W.2d at 228. The judicial-acceptance component of the doctrine is the focal point of the resolution of this case.

**B. Judicial Acceptance.** The court of appeals held that the admission of liability by Tyson Foods was judicially accepted by the commissioner at the first alternate medical care hearing. Tyson Foods asserts on further review that its initial acceptance of liability was never accepted by the commissioner in rendering the decision.

---

*State v. Duncan*, 710 N.W.2d 34, 43–45 (Iowa 2006) (discussing judicial estoppel, but not mentioning intent to mislead); *Wilson v. Liberty Mut. Group*, 666 N.W.2d 163, 166–67 (Iowa 2003) (estopping a party's inconsistent position, but not imposing an intent-to-mislead requirement); *State v. Jacobs*, 607 N.W.2d 679, 686–87 (Iowa 2000) (discussing judicial estoppel, but not addressing intent to mislead); *Ezzone v. Hansen*, 474 N.W.2d 548, 549–51 (Iowa 1991) (discussing the "elements" of judicial estoppel, but not mentioning intent to mislead). Our past inconsistency in requiring an intent to mislead reflects national equivocation on the question of whether intent should be relevant to application of judicial estoppel. *See* Brian A. Dodd, *Civil Procedure Intent and the Application of Judicial Estoppel: Equitable Shield or Judicial Heartbreak?*, 22 Am. J. Trial Advoc. 481, 481 (1998) (observing "[t]he degree to which a court will consider the intent of a litigant in the application of judicial estoppel is an issue causing great division among the jurisdictions, with no clear or unequivocal guidelines"). We believe the better approach is to refrain from "establish[ing] inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire*, 532 U.S. at 751, 121 S. Ct. at 1815, 149 L. Ed. 2d at 978. As such, a party's intent to mislead is not a mandatory requirement, but may be considered insofar as it is relevant to pursuit of the stated goal of judicial estoppel: protection of the integrity of the judicial process. *Whitacre P'ship v. Biosignia, Inc.*, 591 S.E.2d 870, 891 (N.C. 2004) (refusing to impose a scienter requirement but allowing "it would weigh heavily in favor of invoking the doctrine" of judicial estoppel).

We have never explicitly defined what constitutes "judicial acceptance." However, examination of our previous judicial estoppel jurisprudence demonstrates we have found judicial acceptance only when the previous, inconsistent assertion was material to the holding in the first proceeding. For example, we applied the doctrine of judicial estoppel in *Wilson v. Liberty Mutual Group*, 666 N.W.2d 163 (Iowa 2000). In *Wilson,*

> a workers' compensation claimant settled his case with his employer under the provisions of Iowa Code section 85.35. As required by that statute, Wilson admitted there was a bona fide dispute with his employer regarding the cause of his injury. His employer's insurance carrier paid benefits under the settlement agreement. Wilson then filed a lawsuit against the insurance carrier for alleged bad-faith failure to settle the claim.

*Haverly,* 727 N.W.2d at 574 (citing *Wilson,* 666 N.W.2d at 165). We held Wilson was estopped from claiming a bad-faith failure to settle because the court relied on his prior acknowledgement of a bona fide dispute over liability in approving the settlement agreement. *Wilson,* 666 N.W.2d at 166–67. *See generally* Iowa Code § 85.35 (requiring parties to a contested case to submit a settlement to the workers' compensation commissioner for approval). We observed that

> [p]lainly Wilson's position in the bad faith action is inconsistent with the position he asserted in the workers' compensation litigation. To prevail on his bad faith claim, Wilson would necessarily have to prove that Liberty Mutual had no reasonable basis to deny his claim. Yet in the section 85.35 proceedings before the workers' compensation commissioner, Wilson successfully asserted there was a bona fide dispute as to whether his injuries were work-related so as to entitle him to additional benefits. These positions are clearly inconsistent.

*Wilson,* 666 N.W.2d at 167.

In contrast, in *Vennerberg Farms* we held an issue was not judicially accepted when the position asserted was not material to the disposition of the prior litigation. 405 N.W.2d at 814. In that case, Vennerberg Farms, Inc. was owed money by Stennett Elevator, Inc., a licensed grain dealer, under various deferred-payment contracts. *Id.* at 812. However, the state commerce commission revoked Stennett Elevator's grain dealer's license, resulting in the appointment of a receiver. *Id.* In such a circumstance, Iowa Code section 542.12 required Vennerberg Farms to file any claims against the grain dealer (Stennett) and its surety within 120 days of the revocation of the license. *Id.* at 811–12.

Vennerberg Farms subsequently filed a claim, which the surety denied as untimely. *Id.* at 812. Vennerberg Farms then filed a petition in district court, which required the court to decide whether Vennerberg Farms filed its claim within 120 days of the revocation of Stennett's grain dealer's license, as required by statute. *Id.* at 814.

In a previous proceeding, Vennerberg Farms had asserted Stennett's license was revoked in November of 1983. *Id.* The surety argued Vennerberg Farms was bound to its assertion in the previous lawsuit under the doctrine of judicial estoppel. *Id.* However, we refused to apply the doctrine to bind Vennerberg Farms on the grounds that "[t]he precise date of Stennett's license revocation was immaterial in the prior litigation and no particular date can reasonably be claimed to have been accepted unequivocally by the court." *Id.*

Consequently, it is apparent judicial estoppel applies only when the position asserted by a party was material to the holding in the prior litigation. This approach most closely tracks the rationale underlying judicial estoppel, as reflected in our prior pronouncement that, "[a]bsent

judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent, misleading results exists." *Id*; *accord Haverly*, 727 N.W.2d at 573; *Wilson*, 666 N.W.2d at 166; *Jacobs*, 607 N.W.2d at 687; *Roach*, 524 N.W.2d at 403; *Graber*, 410 N.W.2d at 228. When the inconsistent facts are not material to the disposition of the successive proceedings, these facts do not pose a risk of producing inconsistent or misleading results. Consequently, where there is no risk of inconsistent or misleading results, the rationale underlying the judicial estoppel doctrine is not advanced and there is no reason to apply the doctrine.

*Vennerberg Farms*—our seminal case addressing the doctrine of judicial estoppel—is an apt example. The date of revocation of Stennett's grain dealer's license was not material to the outcome of the first proceeding. That date was, however, dispositive in *Vennerberg Farms*, 405 N.W.2d at 813, the second proceeding. Yet, even if the two proceedings yielded misleading or inconsistent results, those results did not occur as a result of Vennerberg Farms advancing inconsistent positions regarding the date of revocation in the two proceedings. As *Vennerberg Farms* implies, the application of the doctrine of judicial estoppel under such circumstances simply does not advance the policy goal of avoiding inconsistent, misleading results.

With these concepts in mind, we turn to the circumstances of this case. There is no doubt Tyson Foods asserted a position in the first proceeding for alternate medical care inconsistent with its position in the second proceeding. Yet, as our cases have developed, the fighting question is whether the inconsistent position asserted in the first proceeding was accepted by the commissioner in the disposition of the matter.

When an injured worker files a petition for alternate medical care, the admission of liability can be, and usually is, an essential issue to the resolution of the matter. Liability is normally an important component of the course of an alternate medical care proceeding because "the commissioner cannot order that the alternate care sought by the employee be furnished by the employer prior to a determination of compensability of the injury." *R.R. Donnelly*, 670 N.W.2d at 197. Thus, if the employer accepts liability, the commissioner is permitted to determine the "reasonableness and necessity of medical care sought by an employee as an alternative to the care furnished by the employer." *Id.* Conversely, if the employer denies liability, the commissioner must deny the petition. *Id.* Under this approach, the issue of liability, in both situations, is usually necessary to the disposition of the petition. Accordingly when an employer takes a position on liability during the proceedings on alternate medical care, the commissioner normally relies on that position in disposing of the application. *See Haverly*, 727 N.W.2d at 575. This case, however, is an exception.

In this case, Tyson Foods clearly took a position on liability at the first hearing. However, the commissioner did not act in any way to dispose of the application based on that position. Instead, the commissioner dismissed the petition solely because the grounds for alternate medical care asserted by Hedlund in the petition were determined to be mistaken, and the mistake was unrelated to the issue of liability or the acknowledgement of liability by Tyson Foods. Once the mistake was clarified at the hearing, the employee no longer needed the commissioner to determine the reasonableness and necessity of the medical care. The alternate medical care issue was rendered moot, and the proceeding was, as a result, a nonevent. The admission of liability by

Tyson Foods played no role in the dismissal of the petition by the deputy commissioner. Consequently, judicial estoppel does not apply.

Hedlund argues that the failure to apply judicial estoppel to the circumstances of this case will permit employers to accept liability during the course of a workers' compensation proceeding for the purpose of controlling medical care, and then later allow employers to deny the claim at the hearing in an effort to avoid responsibility for the injury. She argues this situation will enable employers to undermine the purpose of the alternative medical care process. Tyson Foods acknowledges tension can exist between employers and employees over the control of medical care, but points to its own problems when forced to take a position on liability before all relevant medical information may be known.

We recognize the problems that can arise between the parties over medical care. Yet, we think our existing legal principles, of which judicial estoppel is only one, serve to allay the competing concerns. Even though judicial estoppel applies only when needed to protect the integrity of the judicial process, a "broader analytical framework of estoppel and preclusion doctrines" exists to allow courts to equitably address the concerns of the parties. *See Whitacre P'Ship*, 591 S.E.2d at 879. In other words, there are additional considerations beyond the judicial acceptance component of judicial estoppel to guide in a fair resolution of the concerns over medical care hypothesized by the parties. Such concerns are not presented under this record.

### V. Conclusion.

The workers' compensation commissioner and district court erroneously applied the doctrine of issue preclusion. The doctrine of judicial estoppel does not apply. We vacate the decision of the court of

appeals, reverse the judgment of the district court, and remand the case to the workers' compensation commissioner for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED.**