# IN THE COURT OF APPEALS OF IOWA

No. 17-2052
Filed July 18, 2018

IN RE THE MARRIAGE OF KRISTINE D. KRAABEL
AND THOMAS P. KRAABEL

Upon the Petition of
**KRISTINE D. KRAABEL,**
        Petitioner-Appellant,

**And Concerning**
**THOMAS P. KRAABEL,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Winneshiek County, Margaret L.

Lingreen, Judge.


        Kristine Kraabel appeals the dismissal of her petition for dissolution of

marriage.  Thomas Kraabel cross-appeals the district court's evidentiary ruling.

**AFFIRMED.**


        Kerry A. Finley, Allison M. Heffern, and Kristen A. Shaffer of Shuttleworth &

Ingersoll, P.L.C., Cedar Rapids, for appellant.

        Matthew J. Brandes and Rae M. Kinkead of Simmons Perrine Moyer

Bergman, P.L.C., Cedar Rapids, for appellee.


        Heard by Vogel, P.J., and Doyle and Bower, JJ.

**VOGEL, Presiding Judge.**

Kristine Kraabel appeals the dismissal of her petition for dissolution of her marriage to Thomas Kraabel. Kristine argues the district court erred in determining Thomas was not an Iowa resident and therefore the court did not have subject matter jurisdiction over the matter. Thomas cross-appeals, arguing the district court abused its discretion in granting Kristine's motion to strike an affidavit and exhibits from his foreign counsel. We agree with the district court that Thomas is not a resident of Iowa and therefore subject matter jurisdiction is negated. Therefore, we affirm the dismissal of the petition and deny Kristine's request for appellate attorney fees. Because we affirm the district court, we do not reach Thomas's cross-appeal.

### I.     Background Facts and Proceedings

This case embodies the jurisdictional problem a divorcing couple may face when most of their married life has been spent residing in multiple foreign countries. Back in 1983, Thomas's family moved to Decorah, Iowa, when his father was hired as the Vice President, Dean of Luther College. In 1989, Thomas graduated from Luther College. His father is deceased, but his mother and other family members still live in Decorah.

Thomas and Kristine were married on November 13, 1999, in Richmond, Virginia, but moved to Singapore shortly thereafter. Thomas's work expertise is outside the United States and, therefore, he and Kristine moved frequently during the marriage for his employment. In April 2003, the parties moved to China. In May 2003, Kristine briefly returned to Singapore to give birth to their only child, E.H.K. Thomas's employment in China subsequently ended and, in January 2004,

the parties and E.H.K. moved to Decorah. In April 2004, Thomas moved to Singapore again to begin new employment. In August 2004, Kristine and E.H.K. joined Thomas in Singapore. In March 2007, the parties and E.H.K. moved to Belgium. Once Thomas's employment in Belgium ended, the parties and E.H.K. again moved to Decorah in October 2009. The parties homeschooled E.H.K., who was six years old, during this time rather than enroll her in an Iowa school. Thomas remained unemployed until November 2010, when the parties and E.H.K. moved to Singapore once more for Thomas to begin work with a new employer. E.H.K. began attending school in Singapore shortly thereafter. Thomas temporarily moved to the United Arab Emirates in February 2013, and he returned to Singapore in January 2014. In August 2015, E.H.K. began attending a boarding school in Scotland. At the time of the hearing, Thomas lived in Singapore, Kristine lived in Tromsø, Norway, and E.H.K. lived in Edinburgh, Scotland during the school year.

Thomas, Kristine, and E.H.K. are United States citizens. All three have also obtained rights to live and work in various foreign countries, including Singaporean permanent resident status and re-entry permits. Permanent resident status gives the holder the legal right to live and work in Singapore, and it typically does not expire. A re-entry permit allows a permanent resident to enter and leave Singapore, and it must be renewed every five years. Thomas obtained permanent resident status and a re-entry permit for Singapore in 2011, and he renewed his re-entry permit in 2016.

In September 2003, the parties purchased a home in Decorah. Thomas testified they purchased the home as an investment and as a potential retirement

home. Thomas acknowledged they have referred to the home as *Juvelen*, which is Norwegian for "the jewel," although he also notes they bought the home from the Jewell family. A caretaker lives in the home rent-free, but the caretaker must leave the home when the parties return to Decorah. The parties inhabited this home when they lived in Decorah in 2004 and 2009–10. Thomas testified they inhabit the Decorah home "normally for a couple of weeks a year, in the summer and Christmas," and he has "never" intended to live there permanently. In November 2005, the parties bought a second home in Decorah, which they initially rented out as an investment property and later sold on contract. At the time of the hearing, Thomas leased his apartment in Singapore, and the only assets he owned in Singapore were two businesses with no active contracts, financial and retirement accounts, and personal property. He testified this lifestyle "is how we have lived our entire life."

For tax year 2010, the parties filed their Iowa income tax return as part-year Iowa residents who moved out of Iowa on October 31. The parties continued to file Iowa income tax returns as Iowa nonresidents every year through tax year 2015, the most recent year available at the time of the hearing.[1] Thomas is registered to vote in Iowa, but he does not have a valid Iowa driver's license. Since moving out of Iowa in 2010, Thomas has returned to Iowa several times to visit family and friends, and he spent multiple weeks in Iowa during both 2016 and 2017.

Thomas initially filed a petition for dissolution of marriage in Iowa on December 29, 2016. In the petition, Thomas stated he had been a resident of Iowa

---

[1] The parties had not filed a 2016 Iowa income tax return at the time of the hearing, though they planned to do so.

for more than the past year. In a February 9, 2017 email, Kristine told Thomas she would not accept service on the petition until they could resolve certain issues, including jurisdiction. On March 17, Thomas filed a writ for divorce in Singapore.[2] He testified he filed in Singapore because he had only recently met the Singaporean residency requirement for filing, and he made a mistake in claiming on the earlier Iowa petition that he was a resident of Iowa. On March 22, he voluntarily dismissed his Iowa petition.

On April 28, 2017, Kristine filed the petition at issue here, seeking dissolution of the marriage, spousal support, physical care of E.H.K., and attendant child support. In the petition, she alleged, "Thomas has previously represented to this Court that he is a resident of the State of Iowa." On June 14, Thomas filed a motion to dismiss, in which he claimed neither party is a resident of Iowa, and thus Iowa courts do not have jurisdiction over the proceeding. Kristine resisted the motion, asserting she was a resident of Virginia, living in Norway, and that Thomas was a resident of Iowa. The district court held a hearing on the motion to dismiss on September 26, and it issued its order on December 5. The court granted Kristine's motion to strike an affidavit and exhibits from Thomas's foreign counsel, finding the affidavit was hearsay and all of the evidence was irrelevant to the question of whether Thomas is an Iowa resident. The court also granted Thomas's motion to dismiss, finding the court lacked subject matter jurisdiction to address the dissolution of marriage or child custody issues.

---

[2] After the hearing, Kristine noted the Singapore proceeding has been stayed.

Kristine appeals. She claims the district court erred in finding it did not have subject matter jurisdiction to address the dissolution of marriage or custody of E.H.K., and she seeks appellate attorney fees. Thomas cross-appeals, claiming the district court abused its discretion in striking his affidavit and exhibits.

## II.     Standard of Review

We review jurisdictional issues de novo. *In re Marriage of Kimura*, 471 N.W.2d 869, 877 (Iowa 1991).

## III.     Analysis

Domicile is "the basis for a court's jurisdiction to grant a dissolution of marriage decree." *Id.* at 876. "The burden is upon the [petitioner] who is attempting to assert jurisdiction in the district court to establish facts which sustain his claim of jurisdiction . . . ." *Julson v. Julson*, 122 N.W.2d 329, 330 (Iowa 1963).

Under Iowa Code section 598.5(k) (2017), Iowa may have subject matter jurisdiction over a petition for dissolution "where the respondent is a resident of this state."

> Residence for the purpose of section [598.5(k)] has the same meaning as domicile. To have a residence or domicile within the meaning of this section, one must have a fixed habitation with no intention of leaving it.
> Once a domicile is established, it continues until a new one is established. A new domicile is established if all of the following things happen: (1) the former domicile is abandoned; (2) there is an actual removal to, and physical presence in the new domicile; and (3) there is a bona fide intention to change and to remain in the new domicile permanently or indefinitely. This intention must be a present and fixed intention and not dependent on some future or contingent event.

*Kimura*, 471 N.W.2d at 877 (citations and quotation marks omitted); *see also Sylvester v. Sylvester*, 80 N.W. 547, 547 (Iowa 1899) ("Mere length of time during

which a person has lived in a particular locality is not controlling, and if he remain there longer than the period of time required to give him a legal residence, but without any intention of making it his permanent place of residence, he does not become a resident thereof . . . .").

First, Kristine asserts we should presume Thomas is an Iowa resident because he "[m]aintains a residence or place of abode in Iowa," and he "[i]s registered to vote in Iowa."[3] *Schmitz v. Iowa Dep't of Revenue*, No. 12-0100, 2012 WL 4097237 (Iowa Ct. App. Sept. 19, 2012) (quoting Iowa Admin. Code r. 701—38.17(2)). However, Kristine's assertion stems from Iowa tax law under Iowa Code chapter 422. The rule Kristine relies upon explicitly applies "[f]or Iowa individual income tax purposes." Iowa Admin. Code r. 701—38.17. The Iowa Code provides a separate definition of "resident" specific to Iowa individual income tax purposes. Iowa Code § 422.4(15) (defining "resident" to include "any individual domiciled in the state, and any other individual who maintains a permanent place of abode within the state"). Our supreme court explained the framework to determine residency for purposes of dissolution of marriage under Iowa Code chapter 598 in

---

[3] Thomas provided a screenshot of the Iowa Secretary of State website, which shows Kristine was also registered to vote in Iowa as of July 1, 2017. Under the Iowa Code,

> A citizen of the United States who lives outside of the United States has the right to register and vote as if the person were a resident of a precinct in Iowa if the citizen was an eligible elector of Iowa immediately before leaving the United States. . . . This right applies even though while living outside the United States the citizen does not have a residence or other address in the precinct, and the citizen has not determined whether to return to Iowa.

Iowa Code § 48A.5(4). In addition, federal law requires states to "permit absent . . . overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 52 U.S.C. 20302(a)(1) (2018). Thus, neither state nor federal law requires a United States citizen to be currently domiciled within Iowa in order to vote in Iowa.

*Kimura*, 471 N.W.2d 869. We therefore decline to apply the presumption of residency used for individual income tax purposes to the dissolution petition here.

Second, Kristine asserts Thomas is judicially estopped from denying he is domiciled in Iowa. "[J]udicial estoppel is a 'commonsense doctrine' that 'prohibits a party who has successfully and unequivocally asserted a position in one proceeding from asserting an inconsistent position in a subsequent proceeding.'" *Tyson Foods, Inc. v. Hedlund*, 740 N.W.2d 192, 196 (Iowa 2007) (quoting *Vennerberg Farms, Inc. v. IGF Ins. Co.*, 405 N.W.2d 810, 814 (Iowa 1987)). "A fundamental feature of the doctrine is the successful assertion of the inconsistent position in a prior action. Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent, misleading results exists." *Vennerberg Farms*, 405 N.W.2d at 814. Judicial acceptance occurs "only when the previous, inconsistent assertion was material to the holding in the first proceeding." *Tyson Foods*, 740 N.W.2d at 197. Kristine notes Thomas initially filed a petition to dissolve this marriage in Iowa, in which he claimed to be an Iowa resident. However, he soon dismissed his petition, and his claim as an Iowa resident was never relied upon in any judicial decision. Furthermore, the power to adjudicate dissolution proceedings under chapter 598 "cannot be conferred by waiver, estoppel or consent." *In re Marriage of Bouska*, 256 N.W.2d 196, 198 (Iowa 1977). Therefore, judicial estoppel does not apply here.

Third, Kristine asserts the facts show Thomas is domiciled in Iowa. She argues Thomas "has never abandoned" his Iowa domicile, and he uses Iowa as a "home base" between jobs. However, Thomas could not have used Iowa as a "home base" during the marriage until he purchased the Decorah home in 2003.

When the parties married in 1999 or shortly thereafter, Thomas had established his home, family, and employment outside Iowa. Just prior to purchasing the Decorah home in 2003, he owned no realty in Iowa, he had not been physically present in Iowa—other than for brief visits—for multiple years, and he showed no definite plans to permanently return to Iowa. Such actions show he intended to abandon an Iowa domicile and establish a new domicile outside Iowa. *See Kimura*, 471 N.W.2d at 877. Therefore, Thomas was not domiciled in Iowa at the time he purchased the Decorah home in 2003.

Accordingly, Thomas can only be domiciled in Iowa for the petition if he re-established a domicile in Iowa after purchasing the Decorah home in 2003. *See id.* Domicile in Iowa may only be established while physically present in Iowa, and Kristine points to several occasions when Thomas was physically present in Iowa. However, most of these occasions were brief visits to Iowa when Thomas planned to return to his foreign home and employment; thus, Thomas did not intend to abandon his foreign domicile during any Iowa visit when he still held foreign employment and abode.

Thomas acknowledged that he did return to Iowa twice, for extended periods of time while unemployed. First, the family moved to Iowa in January 2004; however, Thomas did not intend to remain in Iowa indefinitely as he returned to Singapore four months later upon finding new employment. *See id.* Kristine and E.H.K. joined him a few months later. Second, the family again moved to Iowa from October 2009 to November 2010. During this time, Thomas's longest consecutive stretch of living in Iowa since marriage, he never showed an intent to remain in Iowa indefinitely. Instead, he remained unemployed during his time in

Iowa, he searched only for employment outside Iowa, and he, Kristine, and E.H.K. left Iowa—returning to Singapore—when he found new employment. Therefore, Thomas has not been physically present in Iowa with the intent to permanently remain and abandon his foreign domicile during the marriage as required to re-establish domicile in Iowa. *See id.*

Furthermore, even if Thomas had re-established domicile in Iowa by November 2010, he subsequently abandoned it. In November 2010, he established a new home and employment outside Iowa. He has since spent a majority of his time outside Iowa—mostly in Singapore—and he continues to file Iowa income taxes only as a nonresident. In 2011, he obtained permanent resident status in Singapore, which allows him to live and work in Singapore indefinitely. In 2011, he also obtained—and has since renewed—a re-entry permit, which allows him to freely enter and leave Singapore. These actions show the intent needed to abandon any Iowa domicile and establish a new domicile outside Iowa. *See id.* Nonetheless, Kristine notes Thomas has several remaining connections to Iowa. He has returned to Iowa for several weeks each year, but he always visits with the intent to return to his home and work outside Iowa. He maintains a house in Iowa, but a caretaker lives in the house most of the year, and a caretaker is expected to return to the house when the parties leave Iowa. His other Iowa connections include family and friends, professional relationships, financial accounts, and other property. However, merely maintaining these connections does not show Thomas intended to remain in Iowa indefinitely. Therefore, even if Thomas re-established domicile in Iowa in November 2010, he subsequently abandoned his Iowa domicile. *See id.*

To summarize, the facts show Thomas abandoned his Iowa domicile prior to purchasing the Decorah home in 2003. Since 2003, he has not been physically present in Iowa with the intent to abandon his old domicile and re-establish domicile in Iowa. Furthermore, even if he had re-established domicile in Iowa by 2010, his actions since show his intent to abandon any Iowa domicile and establish a new domicile outside Iowa. Because Thomas was not an Iowa resident at the time Kristine filed the petition, the court lacked subject matter jurisdiction to proceed and the court did not err in dismissing it.[4] *See id.* Although Kristine passionately sets forth the disadvantageous position she will be left with should Iowa not assert jurisdiction, we cannot remedy her situation by fictitiously creating jurisdiction.

Additionally, Kristine seeks an initial child-custody determination regarding E.H.K. She argues Iowa is the only state that satisfies the factors for an initial child-custody determination under Iowa Code section 598B.201. However, she requests a child custody determination under a petition for dissolution. *See* Iowa Code § 598.41 (controlling custody of children). As explained above, Iowa has no

---

[4] Kristine also argues Iowa should not decline to hear the petition pursuant to the doctrine of *forum non conveniens*. Under *forum non conveniens*, "a court can decline to proceed with an action, although venue and jurisdiction are proper." *Silversmith v. Kenosha Auto Transp.*, 301 N.W.2d 725, 726 (Iowa 1981). However, *forum non conveniens* does not create jurisdiction in the most convenient forum when no jurisdiction exists. *See id.* While Kristine argued before the district court that Iowa is the most appropriate forum, the court found it had no jurisdiction. Because the district court did not address *forum non conveniens* and Kristine did not file a motion to reconsider, error is not preserved on the issue on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal.").

subject matter jurisdiction over the petition for dissolution of marriage. Without jurisdiction, Iowa cannot make a custody determination under the petition.

Finally, Kristine requests appellate attorney fees. Appellate attorney fees are within the discretion of the appellate court. *In re Marriage of Ask*, 551 N.W.2d 643, 646 (Iowa 1996) (citing *In re Marriage of Gaer*, 476 N.W.2d 324, 326 (Iowa 1991)). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *In re Marriage of Hoffman*, 891 N.W.2d 849, 852 (Iowa Ct. App. 2016) (quoting *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997)). Kristine was not successful on appeal; accordingly, we decline to award her appellate attorney fees.

Because we affirm the motion to dismiss, we need not reach Thomas's cross-appeal regarding the admission of his evidence.

**AFFIRMED.**