# IN THE COURT OF APPEALS OF IOWA

No. 24-1736
Filed July 23, 2025

**DENNIS D. BRADFORD,**
    Plaintiff-Appellant,

**vs.**

**SCOOTER'S COFFEE, LLC, LOVING CUP, LLC d/b/a SCOOTER'S COFFEE and SHERWOOD FOREST COMPANY,**
    Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

        A plaintiff appeals a summary judgment ruling dismissing his premises-liability claims under judicial estoppel.  **AFFIRMED.**

        Erik A. Luthens of Parrish-Sams Luthens Law, P.C., West Des Moines, for appellant.

        LaCygne Howser of Engles, Ketcham, & Olsen, P.C., Omaha, Nebraska, for appellee Sherwood Forest Company.

        J. Scott Bardole of Andersen & Associates, West Des Moines, for appellees Scooter's Coffee, LLC and Loving Cup, LLC d/b/a Scooter's Coffee.

        Considered without oral argument by Schumacher, P.J., Sandy, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**VOGEL, Senior Judge.**

After slipping and falling outside of a Scooter's Coffee shop, Dennis Bradford sued Scooter's Coffee, LLC[1] and the owner of the shopping center, Sherwood Forest Company, bringing premises-liability tort claims. However, in the two years between his fall and filing suit, Bradford entered Chapter 7 bankruptcy proceedings and never disclosed any tort claims arising from his fall. He was granted a discharge and later his bankruptcy estate was closed without any action on, or distribution of, these tort claims. When the bankruptcy proceedings were revealed during discovery in this tort action, Scooter's and Sherwood Forest moved for summary judgment, arguing Bradford was judicially estopped from pursuing claims undisclosed in the bankruptcy proceedings. The district court granted the motion. Because Bradford knew of these tort claims during his bankruptcy proceedings but withheld them from the bankruptcy court and his creditors, judicial estoppel bars this tort action. Thus, we affirm.

## I. Factual Background and Proceedings.

In February 2021, Bradford was delivering a package in the course of his employment to a Scooter's location in Windsor Heights. Outside the coffee shop, he slipped and fell on a patch of snow or ice, sustaining injuries. The Scooter's was located within a shopping center owned by Sherwood Forest. Later that year, Bradford hired an Iowa attorney—Erik A. Luthens—to investigate and pursue a

---

[1] Defendant Loving Cup, LLC is a Kansas corporation, d/b/a Scooter's Coffee. We refer to both defendants as Scooter's.

lawsuit against Scooter's and Sherwood Forest based on his fall. He also retained a Missouri attorney—Joe Klenofsky—to pursue a worker's compensation claim.

In November 2022, Bradford and his wife petitioned for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Western District of Missouri. He was represented by Missouri bankruptcy counsel, Todd S. Abplanalp. As part of the bankruptcy action, Bradford was statutorily required to disclose a schedule of his assets and liabilities. *See* 11 U.S.C. § 521(a)(1)(B)(i) (2022); Fed. R. Bankr. P. 1007(b)(1)(A). The schedule form specifically prompted him to disclose, under penalty of perjury, all "[c]laims against third parties, whether or not [he had] filed a lawsuit or made a demand for payment." Examples of claims included "accidents" and "rights to sue."

Bradford's asset schedule disclosed two claims: the workers' compensation claim arising from the 2021 Scooter's fall and a personal injury claim arising from an unrelated car accident involving his wife. He did not disclose any tort claims—premises liability or otherwise—against Scooter's or Sherwood Forest. For the workers' compensation claim, Bradford sought to exclude any award from distribution to creditors, claiming it was exempt under Missouri law. *See* 11 U.S.C. § 522(b)(3)(A); Mo. Rev. Stat. § 287.260(1).

Later in the bankruptcy action, Bradford was examined under oath by the bankruptcy estate trustee. *See* 11 U.S.C. §§ 341 (requiring trustee to "convene and preside at a meeting of creditors" and "orally examine the debtor"), 343 (clarifying debtor examinations during § 341 meetings are under oath). There, Bradford expressly limited his claims against third parties to just his Missouri workers' compensation claim and his wife's car accident claim:

Trustee: . . . Does somebody have a workman's comp. claim?
Mr. Bradford: Yes.
Trustee: Who has the workman's comp. claim?
Mr. Bradford: I do.
Trustee: OK, and do you have any other claims?
Mr. Bradford: No.
Trustee: OK, in the trustee questionnaire, I—the question is, do you have any basis to sue anyone? And you wrote in "Workman's comp. claim and personal injury claim" and then as an explanation, you showed, um, discrimination claim. Well, I guess that's from your lumpsum, OK. So, do you—do either one of you have a personal injury claim?
Mrs. Bradford: Yes, ma'am, I do.
. . . .
Trustee: . . . Do . . . either one of you have any other claims for any other reason against another that you're aware of?
Mrs. Bradford: No.
Trustee: Mrs. Brad—Mr. Bradford?
Mr. Bradford: No.

On February 28, 2023, the bankruptcy court granted Bradford a discharge of his debts.

Just days earlier, on February 16, Bradford sued Scooter's and Sherwood Forest in Iowa district court, bringing premises-liability claims based on injuries he sustained from the 2021 fall. At no time before filing suit did Bradford supplement his bankruptcy asset schedule to disclose these tort claims. *See* Fed. R. Bankr. P. 1007(h) (mandating that debtors file a supplemental schedule within fourteen days of learning of a new property interest).

Meanwhile, after the bankruptcy court granted Bradford's petition to discharge debt, the bankruptcy estate trustee began amassing and allocating Bradford's assets among his creditors. *See generally* 11 U.S.C. § 704. During that process, Bradford filed two more amended asset schedules, neither of which disclosed any claim against Scooter's or Sherwood Forest. Ultimately, the bankruptcy estate trustee settled the car accident case, gathered all of Bradford's

assets, reduced "[a]ll scheduled and known assets of the estate" to cash, and issued a final report recommending distributions among Bradford and his creditors. The bankruptcy court accepted the final report and its recommended distributions in April 2024, closing the bankruptcy estate.

After learning of Bradford's bankruptcy proceeding, Scooter's and Sherwood Forest moved for summary judgment in this tort case, arguing (1) judicial estoppel precluded Bradford from pursuing any claims against them that were undisclosed in Bradford's bankruptcy proceedings, and (2) Bradford lacked standing to sue individually because any claim would be property of the bankruptcy estate. In response, Bradford explained he did not intend to mislead the bankruptcy court because he "assumed" the premises-liability claim "was all part of the same thing since it [was] based on the exact same set of circumstances" as his workers' compensation claim. He also notified the court that his tort attorney had been retained by the bankruptcy estate trustee to "represent the estate" in this suit and moved to substitute the trustee as plaintiff.

The district court granted summary judgment for Scooter's and Sherwood Forest under the doctrine of judicial estoppel. The court found Bradford's asset schedule represented to the bankruptcy court that he had no claims against Scooter's or Sherwood Forest, those representations were accepted when his debts were discharged, and allowing Bradford to pursue this suit would give him an unfair advantage over his creditors. The court also rejected Bradford's inadvertence defense, as the summary-judgment record showed he intended to bring these claims both before and during his bankruptcy proceedings, therefore

his failure to disclose the claims could not be excused. Thus, the court held judicial estoppel barred the suit, rendering the standing issue moot.

Bradford now appeals.

## II. Analysis.

Judicial estoppel is a "commonsense doctrine" that "prohibits a party who has successfully and unequivocally asserted a position in one proceeding from asserting an inconsistent position in a subsequent proceeding." *Vennerberg Farms, Inc. v. IGF Ins.*, 405 N.W.2d 810, 814 (Iowa 1987). The doctrine safeguards "the integrity of the judicial process" by forestalling the "incongruity of allowing a party to assert a position in one tribunal and the opposite in another, thereby creating the perception that at least one court has been misled." *Id.*

Judicial estoppel is a court-applied doctrine. Thus, although it was raised through the vehicle of summary judgment here, judicial estoppel is always an "equitable doctrine invoked by a court at its discretion." *Tyson Foods, Inc. v. Hedlund*, 740 N.W.2d 192, 195 (Iowa 2007) (citation omitted). As a result, our review is not for correction of errors at law, but for abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Rodriquez*, 636 N.W.2d 234, 239 (Iowa 2021) (cleaned up). Under this standard— our "most deferential" form of review—mere disagreement with the court's ruling is not enough. *State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017); *see also In re 2018 Grand Jury of Dallas Cnty.*, 939 N.W.2d 50, 66 (Iowa 2020) (McDonald, J., concurring in part and dissenting in part). Instead, we will only disturb the district

court's decision when it is so unsupported that it exceeds the lawful bounds of reasoned judgment.

While we follow a flexible approach to judicial estoppel, it turns on two key elements: taking an inconsistent position in a prior action and judicial acceptance of that position. *Tyson Foods*, 740 N.W.2d at 196. "Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent, misleading results exists." *Id.* (citation omitted).

In the bankruptcy context, judicial estoppel is routinely employed to bar parties from later "asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) (collecting cases). The rationale is straightforward—both the bankruptcy court and the debtor's creditors "base their actions on the" debtor's provided "disclosure statements and schedules." *Id.* at 784; *see also In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) ("[T]he integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding." (citation omitted)). To prevent the court and creditors from being misled, judicial estoppel precludes a later claim when the debtor "has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Hamilton*, 270 F.3d at 784.

Here, there is no dispute Bradford knew of his tort claims against Scooter's and Sherwood Forest before and during his bankruptcy proceeding. He retained counsel to investigate and pursue a lawsuit nearly one year before petitioning for Chapter 7 bankruptcy protection. Yet he did not disclose the claims on his initial asset schedule, nor in his sworn oral statements given to the Trustee during the § 341 meeting as the Trustee reviewed Bradford's disclosed assets. Even after filing this suit, he failed to amend his bankruptcy asset schedule, despite amending it twice for other reasons. By withholding this claim, Bradford represented to the bankruptcy court that he had no claims against Scooter's or Sherwood Forest—a position directly at odds with his position in this suit. *See Jones v. Bob Evans Farms, Inc.*, 811 F.3d 1030, 1033 (8th Cir. 2016) (finding debtor who failed to disclose claim in bankruptcy and later brought suit "took inconsistent positions between his bankruptcy case and this case"). That inconsistent position was accepted by the bankruptcy court when it discharged his debts. *See id.* ("[T]he bankruptcy court, by discharging [the debtor's] unsecured debts, adopted the position that his [undisclosed] claims did not exist."). Thus, both essential elements of judicial estoppel—assertion of an inconsistent position in a prior action and judicial acceptance of that position—are satisfied here.

To avoid judicial estoppel, Bradford exclusively relies on his subjective intent. "[A] party's intent to mislead is not a mandatory requirement" of the doctrine, "but may be considered insofar as it is relevant to pursuit of the stated goal of judicial estoppel: protection of the integrity of the judicial process." *Tyson Foods*, 740 N.W.2d at 196 n.5; *see also Slater v. United States Steel Corp.*, 871 F.3d 1174, 1185 (11th Cir. 2017) (adopting a totality review of the debtor's

omission and circumstances to ensure fair application of judicial estoppel).  To that end, Bradford insists he did not intentionally mislead the bankruptcy court because (1) his workers' compensation claim arose from the same slip-and-fall facts as his tort claims, and he therefore believed disclosing the workers' compensation claim filed in Missouri put the bankruptcy court on notice of his separate tort action filed in Iowa; and (2) he mistakenly listed his Iowa tort attorney, instead of his Missouri workers' compensation attorney, as counsel for his workers' compensation claim on the schedule, which he asserts demonstrates he never intended to conceal the tort claims.  We agree with the district court that neither contention has merit.

Under Missouri law, workers' compensation payments are not distributed to creditors during bankruptcy.  *See* Mo. Rev. Stat. § 287.260(1).  Bradford was aware of this provision, as he listed any workers' compensation award as exempt from distribution.  His tort claims, conversely, are not exempt and would have been resolved to be distributed among his creditors.  Because tort and workers' compensation claims are not interchangeable, but rather materially distinct assets in bankruptcy, the disclosure of one could never be reasonably understood as the disclosure of both.  That is especially so here, given that Bradford exempted the workers' compensation claim from distribution while witnessing the trustee settle and distribute his wife's car-accident tort claim.  Therefore, Bradford should have known a similar distribution should have occurred in his separate premises-liability tort claims.  Nonetheless, he never alerted the bankruptcy court to this separate action, which would have caused the bankruptcy court to resolve and distribute the tort claims as well.

We also find it immaterial that he mistakenly listed his Iowa tort attorney as his Missouri workers' compensation attorney on the asset schedule. A retained attorney is neither a claim nor an asset. Merely listing an attorney for an exempt claim would not put the bankruptcy court on notice of the existence of an undisclosed, nonexempt claim. What's more, we struggle to reconcile Bradford's good-faith argument with his sworn testimony in response to the Trustee's repeated questions, where he in no uncertain terms limited his claims to just workers' compensation and his wife's car accident. Had he believed listing the wrong attorney indeed disclosed his premises-liability claims, he would not have disavowed knowledge of any "other claims for any other reason against another."

In its decision, the district court found Bradford's claimed inadvertence implausible in light of "the totality of the undisputed evidence." In particular, the court highlighted

> 1) his retention of counsel to pursue a premises liability claim prior to filing bankruptcy; 2) the instructions provided by the trustee to his wife that her personal injury claim would be subject to administration and resolution within the bankruptcy estate; 3) the separate pursuit of two actions in different states while the bankruptcy proceeding was pending; and 4) his steadfast failure to amend or supplement his schedules to identify his personal injury claim until after the present motions were filed.

We find this rationale both reasonable and tenable. *See also Slater*, 871 F.3d at 1185–86 (weighing a debtor's claimed inadvertence and considering, *inter alia*, whether a debtor ever corrected the omission, whether creditors or the trustee were nevertheless aware of the claims, whether the debtor disclosed some claims yet withheld others, and whether debtor was pro se). Thus, Bradford has not carried his heavy burden to displace the district court's informed discretion.

Ultimately, by withholding these tort claims from the bankruptcy proceedings, Bradford kept his creditors from recovering their rightful portion of the bankruptcy estate. Judicial estoppel exists to head off precisely this kind of bait-and-switch. *See Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993) ("The basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh. Assuming there is validity in [the debtor's] present suit, it has a better plan. Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively."). Accordingly, the district court did not abuse its discretion and summary judgment is affirmed.[2]

**AFFIRMED.**

---

[2] Bradford does not challenge the district court's holding that judicial estoppel moots the standing question. Thus, because we affirm summary judgment under judicial estoppel, we need not reach the standing issue.