**VENNERBERG FARMS, INC., Appellee,**

v.

**IGF INSURANCE COMPANY, Appellant.**

**No. 86–506.**

Supreme Court of Iowa.

May 13, 1987.

Charles F. Becker and Ronald L. Anderson of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellant.

1. Since the commencement of this action, these responsibilities have been delegated to the newly-formed Department of Agriculture and Land

Gale E. Juhl of Morain, Burlingame, Pugh & Juhl, West Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, LAVORATO, and NEUMAN, JJ.

NEUMAN, Justice.

This appeal arises from a suit on a grain dealer's bond in which the district court entered judgment in favor of the claimant, Vennerberg Farms, Inc. (Vennerberg), against the surety, IGF Insurance Company (IGF). At the heart of the controversy is the question whether the limitation period for filing claims against the surety commences from the date of a hearing examiner's proposed order revoking the grain dealer's license or from the date such order is affirmed by the agency. The district court held that the latter date applied and we agree, thereby affirming the trial court.

By way of background, we note that the legislature has delegated the licensing and regulation of grain dealers and bonded warehouses for agricultural products to the Iowa State Commerce Commission by virtue of Iowa Code chapters 542 and 543 (1983).[1] The statutory scheme provides the following procedure for filing claims against dealers whose licenses have been revoked:

> Upon revocation, termination or cancellation of a grain dealer license, any claim for the purchase price of grain against the grain dealer shall be made in writing and filed with the grain dealer and with the surety on the grain dealer bond within 120 days after revocation, termination or cancellation. Failure to make this timely claim shall relieve the surety of all obligation to the claimant....

> Upon revocation of a grain dealer license, the commission shall cause notice of such revocation to be published once each week for two consecutive weeks in a newspaper of general circulation within the state of Iowa.... The notice shall

Stewardship. *See* Iowa Code chapters 542 and 543 (1987).

state the name and address of the grain dealer, the effective date of revocation, and the name and address of the surety on the grain dealer bond. The notice shall also state that any claims against the grain dealer shall be made in writing and sent by ordinary mail or delivered personally within 120 days after revocation to the grain dealer and the surety on the grain dealer bond.

Iowa Code § 542.12 (1983).

With this statutory framework in mind, we turn to the facts stipulated by the parties before the district court. Vennerberg held deferred payment contracts with Stennett Elevator, Inc. of Red Oak, Iowa, for corn delivered and sold from May 1983 to September 1983 totaling $85,279.93. When the contracts were executed, Stennett (who is not a party to this action) was a grain dealer licensed in accordance with chapter 542 and IGF was the surety on its grain dealer's bond.

In September 1983, the head of the grain warehouse division of the Iowa State Commerce Commission filed an information against Stennett Elevator alleging that it was in violation of a number of licensing requirements including, most significantly, a quality deficiency in more than 250,000 bushels of grain.

An evidentiary hearing was held and on November 23, 1983, an Iowa State Commerce Commission hearing examiner issued a ruling captioned "Proposed Order Revoking License" which stated:

1. [Stennett] Warehouse License No. W–3900 and Grain Dealer License No. GD–2286 are hereby revoked. Licensee is prohibited from removing or permitting the removal of grain from its facilities and from purchasing or otherwise acquiring grain.

2. This order shall become the final order of the Commission unless appealed to the Commission within 20 days of the date of issuance.

On December 2, 1983, Stennett Elevator filed a notice of appeal from the foregoing decision and contemporaneously sought a stay order. By order dated December 7, 1983, the commerce commission denied the stay[2] and provided an accelerated briefing schedule for the appeal. On December 23, 1983, the commerce commission issued an "Order Affirming Proposed Decision." In accordance with section 542.12, the commission then published the following notice in the Red Oak Express, a newspaper of general circulation in Red Oak, Iowa:

Pursuant to the requirements of sections 542.12 and 543.14, Code of Iowa, 1983, all interested persons are hereby notified of the revocation of grain dealer license no. GD–2286 and warehouse license no. W–3900 held by Stennett Elevator, Inc., Stennett, Iowa, effective December 14, 1983, the date on which the Iowa State Commerce Commission was confirmed as receiver of the above-named licensee.[3] The surety on the grain dealer and warehouse bond is IGF Insurance Company, 2882—106th Street, Des Moines, Iowa 50322.

Any claims against the former grain dealer and warehouseman must be in writing and sent by ordinary mail or delivered personally within 120 days after revocation (April 12, 1984) to the Iowa State Commerce Commission, Grain Warehouse Division, Lucas State Office Building, Des Moines, Iowa 50319, the above-named licensee and the surety company.

Vennerberg's written claim, dated March 29, 1984, was received by IGF on April 2, 1984. IGF denied the claim as untimely,

---

2. We summarily disregard as irrelevant IGF's suggestion that these stay proceedings evidenced the commission's intent to effectively revoke Stennett's operations on the date of the proposed order. The record reveals the elevator had been under temporary suspension and surveillance by the warehouse division in accordance with Iowa Code section 542.10 for some time prior to hearing before the agency and the effect of the stay order was merely to maintain that status quo pending final agency action.

3. The district court concluded, and we agree, that this published date would only be correct had there been no appeal filed by Stennett. The error is immaterial, however, for Vennerberg's claim filed April 2, 1984, fell within 120 days of either December 14 or December 23.

taking the position that Stennett Elevator's license had been revoked November 23, 1983, and therefore the claim period expired March 22, 1984. Vennerberg filed a petition at law claiming IGF had breached its obligation under the terms of its grain dealer's bonds on file with the commerce commission. IGF generally denied the allegations of the petition and a trial to the court followed.

Ruling in favor of Vennerberg, the district court held that for purposes of determining the claims limitation period of section 542.12, the effective date of revocation of the licenses of Stennett Elevator was December 23, 1983, the date the commerce commission affirmed the proposed order revoking the licenses. On appeal, IGF advances five arguments supporting its claim that the district court erred: (1) the specific language of the hearing examiner's order compels a contrary holding; (2) the district court erroneously equated "effectiveness" with "finality" of the agency order; (3) a judgment appealed to a "superior tribunal" should be given effect as of the date of its entry in the "lower tribunal;" (4) Vennerberg is bound by its assertion in a prior action that the license was revoked in November 1983; and (5) policy considerations favor commencement of the claims period from the earlier date. We shall briefly address each argument in turn.

■ 1. IGF correctly argues that the clear language of section 542.12 provides for commencement of the 120–day claims limitation period "upon revocation, termination or cancellation of a grain dealer license," *not* after the time for appeal has expired, or upon affirmance of the hearing examiner's proposed order or any other time. Such an analysis, however, begs the ultimate question before us: on what date was Stennett's license revoked? In answer to that question IGF points to the clear language of the hearing examiner's November 23 order which states that the licenses "are hereby revoked." Taken out of context, such an order might arguably be deemed to have immediate effect. But the directive was part of a ruling captioned "*Proposed* Order Revoking License" (em-

phasis added) containing equally explicit language that it "*shall become* the final order of the commission unless appealed...." (Emphasis added). When read in context, the prospective application of the order seems readily apparent. Moreover, we presume the hearing officer phrased the proposed order with finality so that it would become effective unless appealed. IGF's selective emphasis on certain wording in the order to the exclusion of the rest does not persuade us otherwise.

2. The district court reasoned that the revocation could only have become *effective* on December 23, 1983, when the commission ruled on the appeal and the hearing examiner's proposed order became *final.* IGF argues that the trial court erred by equating finality with effectiveness. We disagree.

Until the commerce commission acted on December 23, 1983 to affirm the proposed order, the hearing officer's order was nothing more than a proposal, subject to the agency's "unfettered right to find the facts in the first instance." *Iowa State Fairgrounds Security v. Iowa Civil Rights Comm'n,* 322 N.W.2d 293, 294 (Iowa 1982). This fundamental rule of administrative procedure is embodied in Iowa Code section 17A.15(3) which states that "[o]n appeal from or review of the proposed decision, the agency has all the power which it would have in initially making the final decision except as it may limit the issues on notice to the parties or by rule." Indeed, we have said that the hearing officer is an adjunct of the agency, not an independent decision maker. *Iowa State Fairgrounds Security,* 322 N.W.2d at 294. Just as we refused to grant an "elevated status" to a hearing officer's findings in *Iowa State Fairgrounds Security* for purpose of determining whether the commission decision was supported by substantial evidence, so also do we decline to give an elevated status of finality to this "Proposed Order Revoking Licenses," which could have subsequently been modified or reversed.

3. For the same reasons, we find IGF's purported analogy between the administrative and judicial appellate processes unper-

suasive. IGF correctly states that in *Jersild v. Sarcone*, 163 N.W.2d 78, 79 (Iowa 1968) we held that a district court judgment becomes a finality as of the date of its entry. The principle has no application, however, to the administrative appeals process. As one noted commentator has observed "[t]he assignment of the examiner is not that of a judicial officer who makes a decision which is merely subject to review by an appellate tribunal." K. Davis, *Administrative Law Text* § 10.07 at 224 (1974). The analogy is without merit.

4. In a separate cause of action brought by Vennerberg against Stennett Elevator to enforce its deferred payment contracts, Vennerberg asserted that Stennett's license was revoked by the commerce commission "in November, 1983." IGF argues that Vennerberg is bound by this assertion which thus establishes the effective date of revocation.

■ IGF acknowledges that the admission has no preclusive effect because the date of revocation was not an issue relevant to the judgment entered in favor of Vennerberg in the prior proceeding. *See Jorge Constr. Co. v. Weigel Excavating & Grading Co.*, 343 N.W.2d 439, 444 (Iowa 1984). Instead, IGF relies on the doctrine of judicial estoppel or "preclusion by inconsistent positions." 1B *Moore's Federal Practice* ¶ 0.405[8] at 238 (1984). This commonsense doctrine prohibits a party who has successfully and unequivocally asserted a position in one proceeding from asserting an inconsistent position in a subsequent proceeding. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir.1982); *Moore v. United Serv. Auto. Ass'n*, 808 F.2d 1147, 1153 n. 6 (5th Cir.1987); *United States v. Lehman*, 756 F.2d 725, 728 (9th Cir.1985); *Middlekauff v. Lake Cascade, Inc.*, 110 Idaho 909, 915, 719 P.2d 1169, 1175 (1986); *Rowland v. Klies*, 726 P.2d 310, 316 (Mont.1986); *In re Parental Rights to ARW*, 716 P.2d 353, 355–56 (Wyo. 1986). The doctrine is designed to protect the integrity of the judicial process by preventing intentional inconsistency. It addresses the incongruity of allowing a party to assert a position in one tribunal and the opposite in another, thereby creating the perception that at least one court has been misled. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d at 599.

■ The rule has been sparingly applied in other jurisdictions and only alluded to in our own. *See Northwestern Bell Tel. Co. v. Cascade Tel. Co.*, 234 N.W.2d 130, 133 (1975). A fundamental feature of the doctrine is the successful assertion of the inconsistent position in a prior action. Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent, misleading results exists. *Edwards*, 690 F.2d at 599; *United States v. 49.01 Acres of Land*, 802 F.2d 387, 390 (10th Cir.1986); *Moore*, 808 F.2d at 1153; *In re Parental Rights*, 716 P.2d at 356.

■ Turning to the record before us, there is no evidence that Vennerberg misled the court in its action against Stennett or sought to take advantage of IGF by asserting an inconsistent position in the case before us. The precise date of Stennett's license revocation was immaterial in the prior litigation and no particular date can reasonably be claimed to have been accepted unequivocally by the court. We can find no basis for the doctrine's application to this case. The district court was correct in so holding.

5. Finally, we address IGF's contention that the district court's decision disregards the policy behind section 542.12. IGF argues that commencement of the claims limitation period from the date of the final order, instead of the proposed order, injects uncertainty into the process to the detriment of the surety who would otherwise "devote resources previously reserved for potential claims to other worthwhile bonding endeavors." We reject this argument, however, because it disregards the equally important policy of allowing a reasonable period of time in which to file a claim.

As a practical matter, giving retroactive effect to a proposed order would, in this instance, result in the absurd and unfair effect of denying the full 120 days allowed Vennerberg by statute for filing a claim. Moreover, we presume the legislature un-

derstood the concept of finality of agency decisions when it enacted section 542.12 and intended the effective date of an agency action to be the date upon which the agency's decision became final. 250 Iowa Admin.Code 7.2(3) (1983) ("Orders of the Commission will be deemed to become effective upon entry by the Commission unless otherwise provided in the order."); *See also* 199 Iowa Admin.Code 7.2(3) (1986).

We have considered all arguments which have been advanced and find no basis for disturbing the judgment of the district court.

AFFIRMED.