# IN THE COURT OF APPEALS OF IOWA

No. 17-0804
Filed January 24, 2018

**MATTHEW TODD TERRELL,**
     Plaintiff-Appellee,

**vs.**

**JOCELYN MAE WEINMANN,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, John D. Ackerman, Judge.

A mother appeals the district court's modification of the physical care provisions of the custody order affecting the parties' minor child. **AFFIRMED.**

Zachary S. Hindman of Mayne, Arneson, Hindman, Hisey & Daane, Sioux City, for appellant.

Christopher R. Barondeau of Goosmann Law Firm, P.L.C., Sioux City, for appellee.

Heard by Vogel, P.J., and Potterfield and Bower, JJ.

**VOGEL, Presiding Judge**

Jocelyn Weinmann appeals the district court's modification decision that granted physical care of the parties' minor daughter to Matthew Terrell. Jocelyn claims the court should have continued with the joint physical care provision under the original decree. She also appeals the district court's calculation of child support, and she requests appellate attorney fees. Because there has been a substantial change in circumstances such that it is in the child's best interest to eliminate the joint physical care arrangement and for Matthew to have physical care of the child, and the district court's calculation of child support was appropriate, we affirm. We decline to award appellate attorney fees.

## I. Background Facts and Proceedings

Jocelyn and Matthew are unmarried parties who have one child together, Z.R.C., born 2011. Jocelyn and Matthew entered into a "stipulation and agreement" that was incorporated into a decree on April 22, 2015, which established joint legal custody and joint physical care of their child on a week-on/week-off basis. The stipulation also provided that Matthew was obligated to pay $190.17 per month in child support.

Disputes eventually arose after the original decree, and Jocelyn filed an application to show cause on October 25, 2016, claiming Matthew was denying her communication with the child. Matthew responded by asserting the alleged denial was an isolated incident and he is highly supportive of regular telephone communication. However, on January 13, 2017, Matthew filed a petition for modification of custody, support, and visitation. Matthew asserted Jocelyn consistently made decisions that negatively impacted the health and welfare of

their child, including a lack of communication regarding the child's education and health care, delaying or failing to pursue necessary medical or educational services, and speaking negatively about Matthew in front of the child.

After a trial on the matter, the district court, on April 25, 2017, granted Matthew's petition, giving him physical care of the child and giving Jocelyn liberal visitation. The court further ordered Jocelyn to pay child support totaling $216.50 per month and ordered the parties to undergo family counseling.

Jocelyn appeals.

## II. Scope and Standard of Review

Because a proceeding to modify the provisions of a custody decree is an equitable proceeding, we review the district court's decision de novo. *In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). We give weight to the district court's factual findings, especially credibility determinations, but we are not bound by them. *Id.*

## III. Modification of Physical Care

Courts can modify the physical care provisions of a prior decree only when there has been "a substantial change in circumstances since the time of the decree, not contemplated by the court when the decree was entered, which was more or less permanent, and relates to the welfare of the child." *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). Discord between parents during joint physical care arrangements, that has a disruptive effect on children's lives, can be a substantial change of circumstances that warrants a modification of the decree to designate a primary caregiver if it appears that the children, by having a primary

caregiver, will have superior care. *See In re Marriage of Walton*, 577 N.W.2d 869, 870 (Iowa Ct. App. 1998).

Here, it is apparent that both parents, at some point, agreed the joint physical care was not working.[1] Despite Jocelyn's argument at the modification hearing that the joint physical care arrangement should continue, she initially filed a contempt action against Matthew stating the custody decree provisions related to communication were not followed, and she answered Matthew's petition for modification, seeking physical care of Z.R.C., by claiming "the shared care arrangement in this case has not evolved as either of the parties or court envisioned." This sentiment was echoed by the district court, which concluded "[t]hese two parents are not the type of parents who can successfully and respectfully cooperate with each other in regards to the issues of the child. Both parties were of that opinion when the original pleadings were filed in this matter." Thus, because the breakdown in communication has affected the child's health and dental care, and early childhood education, the discord between the parties is a substantial change of circumstance that warrants a modification. *See Id.*

Where the prior arrangement provides for joint physical care, both parents have been found suitable to be physical care parents. *Melchiori*, 644 N.W.2d at 369. However, where the joint physical care arrangement is no longer workable,

---

[1] Relying on judicial estoppel or "the doctrine of preclusion by inconsistent positions," Matthew asserts Jocelyn cannot take the position that the joint physical care arrangement is still viable because she took the opposite position in response to Matthew's modification petition. *See Vennerberg Farms, Inc. v. IGF Ins. Co.*, 405 N.W.2d 810, 814 (Iowa 1987). "[The doctrine] addresses the incongruity of allowing a party to assert a position in one tribunal and the opposite in another, thereby creating the perception that at least one court has been misled . . . . Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted." *Id.* As there was no "judicial acceptance" of Jocelyn's initial position, the doctrine is not applicable.

the court must determine which parent would offer the child superior care. *Id.* It is important to place the child in the environment that will advance the child's mental and physical health and emotional maturity. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Our primary concern is the best interests of the child. *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996).

Jocelyn claims many of the issues cited by the district court, including the child's overall hygiene, dental hygiene, medical care, vaccinations, speech therapy, and counseling, were either present at the time of the initial decree, and thus could not be a substantial change in circumstances, or have been resolved.

In its ruling, the district court held:

> The court has serious concerns about whether Jocelyn understands the importance of obtaining and continuing with appropriate treatment for the child. First of all, she decided on her own that she was not going to allow the child to be vaccinated because she read that some children have a bad reaction. In order to implement her desire not to have the child vaccinated, she filed a religious exemption to vaccinations. She did not have any religious exemption to the vaccination of children. What is even more disconcerting is that Jocelyn was advised by medical professionals that vaccinations would be in the best interests of the child. . . . Matthew immediately took the appropriate steps to get the child the appropriate vaccinations. . . .
>
> . . . .
>
> In regards to the dental controversy, it does not appear that Jocelyn was interested in addressing the child's dental problems until Matthew made an appointment with his dentist to evaluate the child. Jocelyn's dilatory tactics resulted in the child having pain longer than she should have had to endure . . . . The court also notes that Jocelyn has not been aggressive in making sure that the child will have a space for the kindergarten class at the Sergeant Bluff school. It is unclear whether such a spot will be available to the child this fall. On the other hand, Matthew has made arrangements so that the child can attend kindergarten in Homer, Nebraska.

The district court found Matthew was the better parent because he was able to provide superior care for the child. On our review of the record, we agree with

this conclusion. We have reviewed the evidence and find no reason to disagree with the district court's conclusion Matthew is the more mature and better parent. In addition, the current joint physical care arrangement is not in the child's best interest. Because the child will be starting school, changing from one parent's home to the other home on a weekly basis pursuant to the 2015 decree is not suitable. Matthew's promptness attending to the child's various health and developmental issues and stability in the home environment are in the child's best interest. Weighing the child's best interest and Matthew's parenting ability together, we find Matthew has met the burden of showing he can provide superior care.

## IV. Child Support

Jocelyn asserts if the district court's custody modification ruling is affirmed, the district court erred in calculating her child support obligation. In determining the correct amount of child support, the net monthly income of the parties must be computed. *In re Marriage of McCurnin*, 681 N.W.2d 322, 328 (Iowa 2004). We examine the employment history, present earnings, and reasons for failing to work a regular work week when assessing whether to use the earning capacity of a parent. *In re Marriage of Malloy*, 687 N.W.2d 110, 115 (Iowa Ct. App. 2004). Because the guidelines provide for the consideration of a parent's state and federal income tax liability, "the amount of child support ultimately owed . . . is dependent on the allocation of tax exemptions and credits." *In re Marriage of Wade*, 780 N.W.2d 563, 566 (Iowa Ct. App. 2010) (citation omitted).

The district court held:

Jocelyn's gross income for child support purposes [is] $16,380. The Court finds that the cost of health insurance for the child is $1820 a year. Using that information and averaging the guideline amount based on the alternating dependency deduction [the child support amount] is $216.50 per month.

Jocelyn testified she works anywhere from thirty to thirty-five hours per week at Target. Jocelyn asserts the district court should have used the amount stated on her 2016 tax return, $14,700, for her gross annual income; however, her own testimony revealed she now works more hours than in 2016. The district court calculated Jocelyn's gross income by multiplying her hourly rate by the average hours she worked per week by fifty-two weeks.[2] The court conservatively estimated her earning capacity by using the lesser of the hours worked per week—thirty—rather than the greater number of hours she testified she worked—thirty-five. As such, we find no reason to modify the district court's determination of the appropriate amount of child support.

## V. Appellate Attorney Fees

Both parties make a request for appellate attorney fees. Appellate attorney fees rest in the court's discretion. Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (quoting *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993)). Upon our review, we decline to award appellate attorney fees.

---

[2] $10.50 x 30 hours per week x 52 weeks per year = $16,380.

**VI. Conclusion**

Because there has been a substantial change in circumstances since the initial decree, Matthew can provide superior care, and the district court appropriately calculated child support, we affirm.

**AFFIRMED.**