# IN THE COURT OF APPEALS OF IOWA

No. 20-0765
Filed March 17, 2021

**CHAD KIEPE,**
Plaintiff-Appellee/Cross-Appellant,

**vs.**

**CHAD GOSLAR,**
Defendant-Appellant/Cross-Appellee.
_____

Appeal from the Iowa District Court for Crawford County, Duane E. Hoffmeyer, Judge.

Parties cross-appeal from the district court judgment finding Chad Gosler liable to Chad Kiepe for unpaid wages under the Wage Payment Collection Act. **AFFIRMED ON APPEAL; AFFIRMED IN PART AND REVERSED IN PART ON CROSS-APPEAL; AND REMANDED.**

Maura Sailer of Reimer, Lohman, Reitz, Sailer & Ullrich, Denison, for appellant.

Nathan Vos of Vos Law Firm, PLC, West Des Moines, for appellee.

Heard by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

Chad Goslar appeals the district court judgment finding him liable to Chad Kiepe for unpaid wages under the Wage Payment Collection Act. On appeal, Goslar argues (1) the doctrine of judicial estoppel barred Kiepe from arguing Goslar owed him for unpaid wages because Kiepe previously claimed in bankruptcy proceedings that he was not owed any such unpaid wages; (2) the district court's finding that the parties agreed to an hourly component to Kiepe's employment with Goslar was not supported by substantial evidence; and (3) the district court abused its discretion by awarding Kiepe attorney fees. On cross-appeal, Kiepe argues the district court erred by improperly calculating liquidated damages under Iowa Code section 91A.2(6) (2018) and by improperly concluding Goslar modified the employment agreement rather than repudiating it.

## I.    Factual Background

The parties in this case have known each other for decades. Both owned farms in the same community and had been friendly since high school. In 2015, Kiepe decided to sell his farm. Goslar learned Kiepe was selling the farm and contacted him to ask Kiepe if he would be interested in a job on his farm. Kiepe expressed interest, so Kiepe and Gosler met to discuss terms in March 2015. Kiepe's son, Dylan, was present during the discussion.

The terms of the agreement produced by this meeting is the source of this litigation. The parties do not dispute an agreement was reached that created an employment relationship between Goslar and Kiepe in which Kiepe was to be employed by Goslar, Goslar was to pay Kiepe bi-weekly, and the relationship could

be terminated at any time by either party. However, the number of months Kiepe was to work each year and the payment terms of the contract are heavily disputed.

Kiepe and Dylan testified that Kiepe and Goslar reviewed a document written on Hawkeye-branded letterhead that spelled out the terms of the agreement. According to Kiepe, the agreement provided he was to work six months of the year and be compensated for that six months via bi-weekly payments throughout the entire year at a net amount of $1042.50. During the six months Kiepe was not obligated to work, Kiepe asserts the agreement called for Kiepe to essentially be open to requests to work from Goslar when Goslar needed him and Kiepe was available. For any work performed during this six-month "off" period, Kiepe was to be paid $14 per hour. Kiepe asserts he and Goslar both signed the document at the meeting. Kiepe then took the document home and showed it to his wife, Rachael, who testified to looking over the agreement. In his own testimony, Goslar maintained that, while he did agree to pay the $1042.50 net bi-weekly payments, he never agreed that Kiepe would receive an hourly rate and never agreed that Kiepe did not have to work six months of the year.

Kiepe began working for Goslar in April 2015. He was paid his agreed bi-weekly salary during the remainder of 2015. In January 2016, Kiepe presented Goslar with a handwritten log of the hours he had worked during the "off" period during 2015 and claimed a total owed on an hourly basis of $9627. Goslar complained to Kiepe that the amount was high, but paid nonetheless. According to Kiepe, Goslar then asked to see the written contract and the log tracking the hours worked during 2015. Kiepe testified that he gave Goslar the documents.

Kiepe maintained the same practice as he worked throughout 2016 and once again submitted a log of hours worked in 2016 to Goslar in January 2017. This time, Goslar told Kiepe that he would not be paying Kiepe for any hourly wages claimed. In spite of not being paid for his hourly work in the off months of 2016, Kiepe kept working for Goslar in 2017. Kiepe explained that he felt he had no choice but to continue working for Goslar in order to provide for his family.

Kiepe quit on September 6, 2017. When he requested payment for the off-period hours he worked during 2017, Goslar refused to pay. For Kiepe's final bi-weekly pay period in August, Goslar provided Kiepe with a check in the amount of $415.18, which was less than the agreed upon amount of $1042.05. Kiepe refused to cash the check because it was not for the agreed amount, and Goslar refused to issue a new check.

## II.    Procedural History

Kiepe filed the petition in this litigation in December 2018, alleging Goslar intentionally withheld wages for the hours Kiepe worked during the off-period months in 2016 and 2017. Kiepe requested the following damages:

| | |
|---|---|
| 2016 Unpaid Hourly Wages: | $15,983.50 |
| 2016 Liquidated Damages: | $15,983.50 |
| 2017 Unpaid Hourly Wages: | $13,821.50 |
| 2017 Unpaid Salary Wages: | $ 1,280.00[1] |
| 2017 Liquidated Damages: | $15,101.50 |
| Total Damages: | $62,170.00 |

Goslar attempted to defend himself, in part, by pointing to Kiepe's bankruptcy proceedings from earlier in 2018. Kiepe filed for bankruptcy in March

---

[1] The bi-weekly check amount of $1042.05 previously mentioned was the net check after tax withholdings. The gross bi-weekly wages owed before tax withholding was $1280.00.

2018, and as part of his bankruptcy petition had included schedules stating he had no "[c]laims against third parties" and no "[o]ther amounts someone owe[d]" him. Kiepe explained in his testimony that at the time he filed the bankruptcy petition, he did not believe that he had any claim against Goslar for the unpaid wages.

Following a bench trial, the district court determined an oral contract existed between Kiepe and Goslar to pay Kiepe on an hourly basis for the off-season hours he worked in 2016. The court awarded damages for unpaid wages of $15,983.50 for 2016.

As for 2017, the court found Goslar had disavowed any agreement to pay on an hourly basis in January 2017 during the meeting in which Goslar refused to pay Kiepe for hourly wages in 2016. As a result of that disavowal, the court concluded there was no agreement to pay hourly wages during the off-season months in 2017, so Kiepe was not entitled to any unpaid hourly wages for 2017. The court further found Goslar inappropriately withheld Kiepe's last salary check from 2017, so awarded Kiepe damages for that year in the amount of $1280.00.

The court also awarded liquidated damages of $863.17, calculated as five percent of the total unpaid wages for both years of $17,263.50. The court also awarded Kiepe attorney fees and expenses of $33,568.38. This appeal followed.

III.    **Standards of Review**

"[W]e . . . review questions of judicial estoppel for an abuse of discretion." *Kinseth v. Weil-McLain*, 913 N.W.2d 55, 66 (Iowa 2018). "An abuse of discretion occurs when the 'decision is based on a ground or reason that is clearly untenable or when the court's discretion is exercised to a clearly unreasonable degree.'"

*Anderson v. Anderson Tooling, Inc.*, 928 N.W.2d 821, 826 (Iowa 2019) (quoting *Pexa v. Auto Owners Inc.*, 686 N.W.2d 150, 160 (Iowa 2004)).

We review judgments entered after bench trials for correction of legal errors. *Metro. Prop. & Cas. Ins. Co. v. Auto-Owners Mut. Ins. Co.*, 924 N.W.2d 833, 839 (Iowa 2019). "The district court's factual findings have the effect of a special verdict and are binding on us if supported by substantial evidence." *Id.* "In determining whether substantial evidence exists, we view the evidence in the light most favorable to the district court's judgment." *Chrysler Fin. Co. v. Bergstrom*, 703 N.W.2d 415, 418 (Iowa 2005).

"Review of a district court's grant of attorney fees is for an abuse of discretion." *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 684 (Iowa 2020). "We will reverse a court's discretionary ruling only when the court rests its ruling on grounds that are clearly unreasonable or untenable." *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 469 (Iowa 2010).

## IV. Judicial Estoppel

Goslar first argues that, under the doctrine of judicial estoppel, Kiepe should have been barred from arguing that Goslar owed Kiepe unpaid wages because Kiepe indicated he had no outstanding claims in his bankruptcy petition. While Goslar did not raise judicial estoppel in the court below, the doctrine "is intended to protect the integrity of the fact-finding process by [the] courts" and "the issue may properly be raised by courts, even at the appellate stage, on their own motion." *Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 573 (Iowa 2006).

The doctrine of judicial estoppel "prohibits a party who has successfully and unequivocally asserted a position in one proceeding from asserting an inconsistent

position in a subsequent proceeding." *Tyson Foods, Inc. v. Hedlund*, 740 N.W.2d 192, 196 (Iowa 2007). The doctrine "addresses the incongruity of allowing a party to assert a position in one tribunal and the opposite in another, thereby creating the perception that at least one court has been misled." *Kinseth*, 913 N.W.2d at 74. However, judicial estoppel is also an equitable doctrine, which we may invoke at our discretion. *Id.* at 66; *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

We do not find it appropriate to invoke judicial estoppel to bar Kiepe's unpaid-wage claim in this case. Goslar used Kiepe's claimed inconsistent positions on cross-examination to impeach Kiepe. The district court, sitting as factfinder, heard this testimony and addressed the effects of the judgment by directing the clerk of court to inform Kiepe's bankruptcy trustee of the judgment in Kiepe's favor. *See* 11. U.S.C. § 350(b) (2020) (permitting reopening a previously closed bankruptcy case to administer assets). Furthermore, it is unclear from the record whether Kiepe intended to mislead either the bankruptcy court or the district court by making contradictory assertions about unpaid wage claims. *See Kinseth*, 913 N.W.2d at 74 ("[Judicial estoppel] aims 'to protect the integrity of the judicial process by preventing intentional inconsistency.'" (quoting *Vennerberg Farms, Inc. v. IGF Ins.*, 405 N.W.2d 810, 814 (Iowa 1987)). Kiepe testified at trial that he did not believe he had any claim to the unpaid wages when he filed the bankruptcy petition, which is why he indicated he had no potential claims outstanding. Further, Goslar was not harmed by the claimed inconsistency. *Ezzone v. Hansen*, 474 N.W.2d 548, 550 (Iowa 1991) (holding application of judicial estoppel should generally be reserved for situations where inconsistent positions result in "prejudice of the adverse party").

We find no cause to invoke the equitable doctrine of judicial estoppel to protect Goslar from a claim that he failed to pay wages owed to his former employee. We next turn to consider Goslar's alternative arguments.

**V.      Substantial Evidence**

Goslar next argues that, in the event we find the doctrine of judicial estoppel does not bar Kiepe from claiming he had unpaid wages, several of the district court's findings were not supported by substantial evidence. In particular, he argues substantial evidence does not support the district court's findings that: (a) the employment agreement included an hourly wage component for Kiepe's off-season work; (b) Goslar did not renounce the employment agreement until January 2017; (c) Kiepe was entitled to a final paycheck for the pay period ending on September 6, 2017 in the full amount of $1280.00; and (d) Goslar intentionally withheld Kiepe's last paycheck.

**A.      Hourly Wage Component**

The district court found that an oral agreement existed between the parties which entitled Kiepe to receive a biweekly salary of $1280.00 (net amount of $1042.05) for six months of work plus $14.00 per hour[2] for the hours Kiepe worked during the six off-period months. The district court based its determination "upon Kiepe's testimony, the testimony of his wife, his son, and their consistent description of the terms signed and agreed upon by the parties" as well as corroborating evidence "from the other hired hands . . . , confirmation Kiepe worked

---

[2] The district court's ruling includes conflicting recitations of the hourly rate, sometimes referencing $14.00 per hour and other times $15.00 per hour. Kiepe's testimony and briefs make it clear he is asserting an hourly rate of $14.00 per hour.

during those contingent or discretionary months," and Goslar's admission to another farmworker that Kiepe's compensation included an hourly wage component. Goslar disputes all of these findings, as well as the finding that the initial payment of $9627 in January 2016 was for hourly wages.

On the first point, the record shows Kiepe, Dylan, and Rachael all testified consistently that Kiepe would work six months of the year, and would be paid hourly for any time he worked during the six off months. Kiepe testified the written agreement Goslar showed him stated

> that I was to be paid biweekly a thousand forty-two, I think, and some odd change, and that I was hired six months on and six months off, which meant January, February, and March I wouldn't have to be there, or July, August, September, and any days that I showed up during that time, to keep track of my hours and this would be based at $14 an hour.

Neither Dylan nor Rachael recalled which months the written document stated Kiepe would have off, but both testified the agreement called for a six-month off period during which Kiepe was to be paid hourly:

> Q: Can you tell me the terms that you understood, the terms that you read in the document? A. [Rachael]: I understood that he would be paid biweekly a dollar amount, that he would work six months on, six months off, and that anything that he worked in the time that he was off he would be paid an hourly wage.
> Q: Do you remember what the dollar amount was? A: The biweekly?
> Q: Well, either number. If you don't, that's fine. A: The biweekly was a thousand and the hourly would be $14 an hour.
> . . . .
> Q: So you just remember seeing the document? A. [Dylan]: Yes.
> Q: Do you remember seeing words on it? A: Yes.
> Q: Okay. Did—well, why don't you tell me what they discussed then, what Mr. Kiepe and Mr. Goslar discussed. A: They discussed my dad would work six months on, six months off, and that any time that he came in during those months where he was not required to work, he would be paid hourly.

This testimony is further corroborated by other Goslar employees. One such employee, Jim Andresen, testified that he was aware of the extra hourly wage portion of Kiepe's pay:

> Q: . . . I believe in previous conversations we've had you had thought that Mr. Goslar had stated something about paying Mr. Kiepe an hourly wage or agreed that if he went over a certain time he had to pay him. A: After so many hours, if he had to come in on his – the months that he was off or whatever, he got paid an hourly salary.
> Q: Mr. Goslar told you that? A: Well, he said he gets paid a whole different deal than what you do.
> Q: And to follow up with that, he also added about he would have to pay him extra hourly? A: Yeah. I don't know how much an hour or nothing. That ain't my—
> Q: Oh, I'm not asking that. Mr. Goslar had said he would have to pay Mr. Kiepe an extra hourly wage? A: If it was during the time when he was supposed to have off.

Next, Goslar argues the district court's finding that Kiepe worked during the off period was not supported by substantial evidence because Goslar and some of his employees who testified at trial indicated Kiepe did not work during the month of August. While there is some testimony in the record Kiepe did not, other evidence, including Kiepe's testimony and his hourly logs, shows he did. Since we are prohibited from "weighing the evidence or credibility of witnesses" on a sufficiency-of-the-evidence review, we find the evidence on the record sufficient to sustain the finding that Kiepe worked during the challenged months. *See Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 490 (Iowa 2000).

Finally, Goslar disagrees with the district court's finding that the $9627.00 payment he made to Kiepe in January 2016 was for an hourly component of Kiepe's 2015 wages. Goslar claims there was no agreement for hourly wages and the payment of $9627.00 was for tractor rent. As a preliminary matter, it is quite

surprising Goslar reasserts this claim on appeal, as the district court went to great lengths to explain that Goslar's testimony trying to portray this payment as tractor rent is the primary reason the district court found Goslar lacking in credibility in general. Nevertheless, Goslar reasserts the claim here, so we will address it.

Goslar pointed to the fact he wrote "tractor rent" on the check's memo line in support of this point at trial. The district court addressed this argument in its judgment and found Goslar's explanation that the payment was for tractor rent was without merit, noting "[Goslar] paid the amounts [Kiepe] claimed for work done in 2016. This corroborated the existence of an oral contract. . . . Paying for a tractor he never used or that had been surrendered prior to any agreement is incredulous." As with the previous point, it is not our place to reassess the credibility of the witnesses who testified to this point. *See id.* The district court found Kiepe's explanation for the $9627.00 payment was credible and Goslar's explanation was not. Substantial evidence supports this determination.

We conclude substantial evidence supports the district court findings that Kiepe's employment agreement with Goslar included an hourly-wage component.

**B.    Repudiation**

Next, Goslar argues the district court's finding that he repudiated the contract in January 2017 was not supported by substantial evidence because other evidence indicated he repudiated the contract before then.

Generally, a repudiation of a contract "consists of a statement that the repudiating party cannot or will not perform." *Homeland Energy*, 938 N.W.2d at 697. "The language of the statement 'must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform.'" *Pavone v. Kirke*,

807 N.W.2d 828, 833 (Iowa 2011) (quoting Restatement (Second) of Contracts § 250, cmt. b, at 273 (Am. L. Inst. 1981)). "[A] party does not prove a repudiation by simply showing a party's negative attitude, a party's attitude indicating more negotiations are sought, or that a party may finally perform." *Id.*

In support of his argument, Goslar cites to portions of Kiepe's testimony indicating that Goslar denied the existence of a written agreement or did not remember such an agreement. However, these general statements only indicate Goslar questioned the existence of the alleged written agreement, not that Goslar no longer wanted to employ Kiepe or that he would not pay Kiepe for the off-season hours, as he did with the January 2016 payment. As such, the statements Goslar points to on appeal are insufficient to overcome the sufficiency of the evidence supporting the district court's finding Goslar did not repudiate the employment agreement prior to Goslar's express repudiation in January 2017.

### C. Final Paycheck

Goslar argues the record does not establish he intentionally withheld a portion of Kiepe's final paycheck and, therefore, he is not liable for liquidated damages. We disagree. Kiepe testified to repeatedly asking for the total paycheck once Goslar provided the smaller check that did not include the first week in September 2017. Kiepe's account of events was corroborated by Andresen, who testified that Goslar told Kiepe "he wasn't going to pay him nothing" for Kiepe's final week. This evidence is sufficient to conclude Goslar intentionally withheld wages from Kiepe. *See* Iowa Code § 91A.8 ("When it has been shown that an employer has intentionally failed to pay an employee wages . . . whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee

for any wages . . . that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred . . . .").

## VI.    Attorney Fees

The third issue Goslar appeals is the award of attorney fees.  The district court determined that, because Goslar intentionally withheld wages from Kiepe, Kiepe was entitled to an award of attorney fees under Iowa Code section 91A, in the amount of $33,568.38.  Under chapter 91A, an employer who is found to have unlawfully withheld wages from an employee is liable for "usual and necessary" attorney fees the employee paid to litigate the claim.  *Id.*  Goslar claims the district court erred by not reducing the claimed amount of fees to account for Kiepe being unsuccessful on parts of his claims or for unreasonable amounts of hours expended in general.    Goslar, however, has not preserved this issue for our review.  *See Boyle v. Alum-Line*, Inc. 773 N.W.2d 829, 832 (Iowa 2009) ("[T]he party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." (per curiam) (alteration in original) (quoting *Sherman v. Kasotakis*, 314 F. Supp. 2d 843, 882 (N.D. Iowa 2004)).  But even if he had properly presented this issue to the district court, we conclude the district court did not abuse its discretion in setting the fee award.

To determine whether attorney fees are "usual and necessary" under Iowa Code section 91A.8, Iowa courts generally look to the factors articulated in *Gabelmann v. NFO, Inc.*, 606 N.W.2d 339 (Iowa 2000).  These factors include

> the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing

and experience of the attorney in the profession, and the customary charges for similar services.

*Id.* at 343 (quoting *Vaughn v. Must, Inc.*, 542 N.W.2d 533, 541 (Iowa 1996)). The district court considered these factors at length:

> Mr. Vos stated trial had been scheduled for three days and, through the efforts of counsel and the court, trial was able to be completed in one day; however, he was unable to obtain a refund on his second night of lodging. Mr. Vos states the research was not excessive on the breach and repudiation issues, trial preparation is the key to success, and that as trial approached he disclosed his fees to defendant's attorney and received no response from a demand letter.
>
> . . . .
>
> Wage payment claims present a risk to a defendant employer to have a valid defense and, if not, payment of attorney fees is mandatory. A risk/loss balancing must take place. Mr. Goslar denied the existence of any contract, never offered any affirmative defenses, did not respond to a demand letter, and was advised of the extent of the attorney fees incurred before trial started.
>
> The court finds the extent of discovery was not excessive. Mr. Goslar's description of the payment for 2016 as reimbursement for tractor rent or other costs caused discovery to go well beyond what would have been normally expected. Goslar paid the amount Kiepe sought for 2016 wages, but described it for tax purposes, and in his testimony at trial as monies paid for something other than wages. Ultimately, through deposition and subpoena of records, the tractor rent assertion was proven to be without merit. Goslar's actions dictated the extent of required discovery and it is difficult for him to assert it was excessive when it occurred because of his decisions and actions.
>
> Plaintiff's counsel was well prepared. Mr. Vos was knowledgeable of the facts and case law. The trial was expeditiously completed in one day instead of the predicted three days provided to District Court Administration. Plaintiff succeeded on all claims with the exception of the 2017 hourly wage claim. While the court often complains about attorneys who are not prepared and who argue positions that are not supported by the law or are unknowledgeable of the law, the court should not reduce the attorney fee of a successful party who has presented a good case, presented the law, and capably challenged the court's position on some matters.
>
> Plaintiff's motion for fees and costs was supported by five attorney affidavits and contained an itemized statement of fees and expenses. The court finds the plaintiff's request for attorney fees and costs should be granted in full.

We agree with the district court's analysis and conclude the district court did not abuse its discretion in awarding attorney fees in the full amount claimed.

## VII.    Cross-Appeal

### A.    Liquidated Damages Calculation

On cross-appeal, Kiepe first argues the district court erred by improperly calculating liquidated damages under Iowa Code section 91A.8.  *See* § 91A.8 (When it has been shown that an employer has intentionally failed to pay an employee wages . . . the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages . . . .").  The district court calculated liquidated damages taking the total amount of damages ($17,263.50) and multiplying that number by five percent for a total of $836.17.  However, the district court's analysis does not properly interpret the relevant statutory provisions.

Our statutory interpretation naturally begins with the words of the statute. *Doe v. State* 943 N.W.2d 608, 610 (Iowa 2020) ("[I]n questions of statutory interpretation, '[w]e do not inquire what the legislature meant; we ask only what the statute means.'  This is necessarily a textual inquiry as only the text of a piece of legislation is enacted into law.  Any interpretative inquiry thus begins with the language of the statute at issue." (citations omitted)).  Our legislature has defined "liquidated damages," in relevant part, as "the sum of five percent multiplied by the amount of any wages that were not paid . . . multiplied by the total number of days . . . on which wages were not paid . . .  However, such sum shall not exceed the amount of the unpaid wages. . . ."  Iowa Code § 91A.2(6).  Our court has noted the

amount of liquidated damages is properly calculated as "the lesser amount as between the unpaid wages or five percent of the unpaid wages multiplied by the total number of days, excluding Sundays, legal holidays, and a seven-day grace period, during which the wages were not paid." *Jackson v. City of Ottumwa*, 396 N.W.2d 794, 796 (Iowa Ct. App. 1986).

In this case, the district court found the unpaid wages were $17,263.50. The court also properly calculated five percent of those unpaid wages times the total number of days the wages were not paid as $673,273.50. However, rather than following the statute's direction to award liquidated damages as the lesser of the two figures (i.e., $17,263.50 or $673,273.50), the court awarded liquidated damages only in the amount of five percent of the unpaid wages, $863.17. There is no support in the statute for this method of calculation. As the unpaid wages of $17,263.50 is the lesser of the two statutorily relevant figures, that amount is the statutorily required liquidated damages figure. We therefore reverse and remand this case to the district court for entry of judgment for liquidated damages in the amount of $17,263.50.

### B.    Contract Repudiation or Modification

The district court concluded Goslar's January 2017 statements to Kiepe constituted a repudiation of the hourly wage provision of the employment agreement. Kiepe argues the district court erred in this analysis by improperly considering contract modification despite Goslar not pleading modification as an affirmative defense. However, even if contract modification must be pled as an affirmative defense, Kiepe consented to considering modification by allowing testimony from various witnesses indicating Goslar was not going to pay Kiepe for

the hourly portion of wages.  *See Gibson Elevator, Inc. v. Molyneux*, 668 N.W.2d 565, 567 (Iowa 2004) ("When a party introduces evidence without objection on an issue not raised by the pleadings, the court considers the matter tried by consent and properly in the case." (quoting *Dutcher v. Randall Foods*, 546 N.W.2d 889, 893 (Iowa 1996)).  As such, the district court did not err by considering contract modification in this case.  We further conclude the district court did not abuse its discretion by declining to award Kiepe liquidated damages for the hourly wage for the hours worked in 2017.

## VIII.    Appellate Attorney Fees

Having successfully defended Goslar's appeal and partially succeeded on his cross-appeal, Kiepe is entitled to "usual and necessary attorney fees and costs expended on appeal.  *See Runyon v. Kubota Tractor Corp.*, 653 N.W.2d 582, 588 (Iowa 2002) (citing Iowa Code section 91A.8).  We remand to the district court for a determination of such fees and costs to be awarded to Kiepe.  *Id.*

## IX.    Conclusion

We affirm the judgment of the district court on Goslar's appeal.  On Kiepe's cross-appeal, we affirm in part and reverse in part and remand for modification of the judgment in favor of Kiepe for liquidated damages from $836.17 to $17,263.50.  We also remand for a determination of the proper amount to award to Kiepe for usual and necessary attorney fees and costs expended on appeal.

**AFFIRMED ON APPEAL; AFFIRMED IN PART AND REVERSED IN PART ON CROSS-APPEAL; AND REMANDED.**