# IN THE COURT OF APPEALS OF IOWA

No. 24-1792
Filed February 5, 2025

**IN THE INTEREST OF D.C. and D.C.,**
**Minor Children,**

**D.C., Father,**
 Appellant,

**T.J., Mother,**
 Appellant.

_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, Judge.

The mother appeals the termination of her parental rights to two children. The father of one of those children appeals termination of his rights to one child. **AFFIRMED ON BOTH APPEALS.**

Michael M. Lindeman of Lindeman Law, Cedar Rapids, for appellant father.

Katie Eastvold, North Liberty, for appellant mother.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

Annette F. Martin, Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Greer, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

The mother appeals termination of her parental rights to two children under the age of four (as of trial)—one born in 2020 and one in 2023. The children have separate fathers, whose rights were also terminated. The father of the younger child appeals, and the father of the older child does not. On our de novo review, we affirm the juvenile court on both appeals.

## I. Background Facts and Proceedings

This family first came to the attention of the Iowa Department of Health and Human Services (HHS) in 2020 when the older child tested positive for tetrahydrocannabinol (THC) at birth. The mother also tested positive for methamphetamine during pregnancy, but she denied use and claimed she was exposed to the drug by people around her. Then, in 2023, the mother tested positive for methamphetamine and THC at a prenatal appointment while pregnant with the younger child. She admitted to using THC but blamed the methamphetamine result on having sex with the younger child's father.

The juvenile court ordered the older child be removed, but the mother did not cooperate with the removal order for about two weeks. The older child was adjudicated in need of assistance and placed with the maternal grandmother.

The mother was ordered to complete substance-abuse and mental-health evaluations, complete treatment recommendations, and comply with random drug-testing. Once the younger child's father was confirmed by genetic testing and served, he was also ordered to comply with random drug-testing.

The mother was at first compliant with drug-testing and eventually obtained her medical marijuana card. She progressed to unsupervised visits with the older

child while she was still pregnant with the younger child and overall did well during visits. When she gave birth to the younger child, HHS established a safety plan by which the mother would stay with the maternal grandmother, participate in services, and not use marijuana around the children. Like her older sibling, the younger child was also born positive for THC.

A few months after the younger child was born, the mother again tested positive for methamphetamine. After this, the children's hair was drug-tested: the older child tested positive for ingesting methamphetamine and exposure to methamphetamine, amphetamine, and THC; the younger child tested positive for ingestion and exposure to methamphetamine and THC. The mother denied use and was returned to fully supervised visits. And she denied that the younger child's father, who was actively using drugs, was living in the home—though the older child and grandmother told HHS the younger child's father had been living there. The children were formally placed in family foster care.

In the months leading up to trial, the mother's attendance at in-person and video visits declined somewhat, and she was communicating less with the foster parents. She completed some substance-abuse treatment programs but nonetheless tested positive twice for methamphetamine and once for cocaine in 2024—and positive for methamphetamine a total of seven times over the life of the cases. She also missed about a fifth of required drug-tests. And one provider diagnosed her with "severe" cannabis use disorder.

Although not the core focus of the termination proceedings, the record also contains substantial evidence of the mother's instability with regard to housing and

employment and her history of associating with unsafe individuals. But there was also agreement the children were bonded with her and that visits overall went well.

In her trial testimony, the mother claimed she had "never" used cocaine or methamphetamine despite testing positive for both substances. But she admitted to letting a "known" methamphetamine user spend time with her children unsupervised. On direct-examination, she explained that she was asking for more time to work toward reunification. When asked whether she "acknowledge[d the children] could not safely come home today," she agreed. After some cleanup questions by her own attorney on cross-examination, she testified she was ready for the children to return to her custody as of trial.

Meanwhile, the younger child's father was incarcerated first in jail and then in prison after he absconded from a correctional placement, evaded arrest with an active warrant, and later declined a sentence in community corrections after his probation was revoked. The underlying charges related to burglary and possession of controlled substances. The juvenile court found that, even before incarceration, this father had not really participated in any reunification services related to his biological child. After he was imprisoned, one of the only arguable steps toward reunification taken by the younger child's father was occasional pro se letters[1] trying to exchange his work as a jailhouse informant for not terminating his parental rights. In trial testimony, he claimed the children tested positive for controlled substances because he was using methamphetamine and

---

[1] We have also received some pro se letters from the father. But under the rules of appellate procedure, we cannot consider any of the facts he asserts in them. *See* Iowa R. App. P. 6.801 (defining the record on appeal).

hugged or kissed them. And he admitted that the younger child could not be returned to his custody as of trial due to his incarceration on a five-year indeterminate prison sentence. According to the mother, this father never contributed financially toward his child.

An HHS worker testified about concerns relating to the mother's honesty, given her claims she did not consume any substances besides THC despite her and the children testing positive for other drugs. The worker also explained she was concerned the children smelled like marijuana after a visit with the mother. The juvenile court expressed doubts about the veracity of the mother's claimed need for the medical marijuana card and concerns about her continuing to purchase "street" marijuana despite a lawful alternative. And, overall, the court found the mother's testimony "frequently evasive and argumentative and the Court f[ound] it not to be very credible."

The children were doing well in their relative placement and were adoptable. At trial, the county attorney, HHS, and the children's guardian ad litem (GAL) all recommended termination of parental rights. The GAL emphasized it was "very concerning" the mother had failed to acknowledge methamphetamine and cocaine use or meaningfully address the marijuana use. And she highlighted that both children had been removed well beyond the permanency guidelines for their ages.

The juvenile court terminated the mother's parental rights to both children under Iowa Code section 232.116(1)(h) (2024), reasoning that the mother was unwilling or unable to stop using drugs, she lacked credibility in her claims of change, and she failed to demonstrate "any protective capacity" in keeping the children safe and away from drugs. The court terminated the younger child's

father's parental rights to that child under section 232.116(1)(b), (e), and (h), reasoning he had not meaningfully engaged with services before or after his incarceration, could not take custody of the child as of trial, and had consistently placed his needs above the child's. The mother and the younger child's father separately appeal, and we review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

## II. The Mother's Appeal

The mother raises four claims, challenging one of the statutory elements of termination, whether she should have been granted additional time to work toward reunification, whether termination was in the children's best interests, and whether the permissive bond exception should have precluded termination. We consider each.

First, the mother only challenges one of the statutory elements—whether the children could be safely returned to her custody as of trial. Iowa Code § 232.116(1)(h)(4); *see In re A.M.,* 843 N.W.2d 100, 111 (Iowa 2014). In her petition on appeal, she explains her challenge to this element by pointing to her request for additional time and her inconsistent testimony on direct- and cross-examination about whether she could care for the children as of trial. We are not sure this presents a legally cognizable challenge to the elements. But assuming without deciding it does, we affirm the juvenile court. The mother failed to resolve her ongoing substance-abuse problems, as evidenced most clearly by the children's repeated exposure to methamphetamine and THC. And while the mother expressed optimism she could do better in the future, the weight we give this testimony is informed by the juvenile court's credibility findings and the

mother's not-credible claim to have never consumed substances for which she repeatedly tested positive. In sum, the mother has not meaningfully acknowledged her drug problem, let alone taken steps to rectify this adjudicatory harm. And we have repeatedly recognized that methamphetamine is a particularly dangerous substance when it comes to child welfare. *See, e.g.*, *In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan, 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous environment for children."); *In re K.L.*, No. 17-0346, 2017 WL 2465817, at *1 (Iowa Ct. App. June 7, 2017) ("Methamphetamine is a scourge."). We agree with the juvenile court that the children could not be returned to the mother's custody as of trial.

As alluded to in her first challenge, the mother also asserts she should have been granted additional time. "[T]he juvenile court may deny termination and give the parent an additional six months for reunification only if the need for removal 'will no longer exist at the end of the additional six-month period.'" *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (quoting Iowa Code § 232.104(2)(b)). And the parent bears the burden to make that showing. *Id.* at 322–24. The problem with the mother's argument is that she doesn't offer any reason to think things will change six months down the road. We have no reason to believe she will ever acknowledge her methamphetamine addiction or past cocaine use, and it was her burden to prove she would be ready to resume custody within six months. The juvenile court correctly denied the request for additional time.

Next, the mother contests whether termination was in the children's best interests. In deciding best interests, we give primary weight "to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of

the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]."  Iowa Code § 232.116(2).  We also consider the children's integration into the foster family and whether the foster family is willing to permanently integrate the children into their family.  *Id.* § 232.116(2)(b).  For reasons we have already identified, it is certainly not in the best interests of the children to return to the care of a parent using methamphetamine.  These children need stability, they had been removed from the mother's custody and care for a significant period of time, and they deserve a safe and sober home.

Last, the mother argues the permissive bond exception at section 232.116(3)(c) should have thwarted termination.  Suffice to say, a parent addicted to methamphetamine can both love their children and be unfit to parent.  As our case law recognizes, neither a parent's love nor the mere existence of a bond is enough to prevent termination.  *See In re A.B.*, 956 N.W.2d 162, 169–70 (Iowa 2021); *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010).  We, like the juvenile court, find the mother failed to carry her burden to prove by clear and convincing evidence that preserving this bond outweighs the children's need for stability in a safe and sober home—something the mother cannot provide for the reasons discussed in this opinion.  *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting we consider the bond in the context of a case's unique circumstances and the children's best interests).

### III.    The Father's Appeal

In his petition on appeal, the younger child's father challenges the statutory elements of termination under 232.116(1)(h), asserting the State failed to prove the child could not be returned to his custody as of trial.  We summarily affirm on

this issue for two reasons. First, the juvenile court terminated the father's parental rights under 232.116(1)(b), (e), and (h)—and he only meaningfully challenges an element of (h) on appeal. We can and do summarily affirm on the unchallenged grounds. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Second, even if the father's rights were only terminated under paragraph (h), he conceded the challenged element below when he testified the child could not be returned to his custody as of trial. The father cannot concede an element below and then seek to unwind his concession and litigate it on appeal; whether categorized as waiver, forfeiture, estoppel, informal judicial admission, or something else, we conclude a trial concession on the only element contested on appeal leads us to summarily reject the claim.[2] *Cf. In re Marriage of Bolger*, 22-1201, 2023 WL 7378490, at *4 (Iowa Ct. App. Nov. 8, 2023) ("Although there could be some debate over the exact form of waiver at issue here, we are convinced [the appellant's] attempt to change horses mid-stream bars relief on appeal."); *Yockey v. State*, 540 N.W.2d 418, 421 (Iowa 1995) (discussing informal judicial admission); *Vennerberg Farms, Inc. v. IGF Ins. Co.*, 405 N.W.2d 810, 814 (Iowa 1987) (discussing judicial estoppel); *State v. Rasmus*, 90 N.W.2d 429, 430 (Iowa 1958) (discussing invited error or acquiescence).

It is debatable whether the father also challenges whether HHS made reasonable efforts. One sentence of his petition on appeal alleges "there should

---

[2] A majority of this court recently held that a parent is no longer required to preserve error on claims related to the sufficiency of the statutory elements supporting termination. *In re J.R.*, No. 24-0942, 2025 WL 52738, at *2 (Iowa Ct. App. Jan. 9, 2025) (en banc). But this case presents a different question, as the father not only failed to preserve error on his statutory challenge, he conceded the element he now challenges on appeal. We think this is not just a problem of error preservation.

have been more frequent visits and an additional period of time for rehabilitation services." We decline to reach this issue for three different reasons. First, we do not address "sprinkled mentions of an issue." *In re K.P.*, No. 23-1661, 2024 WL 260885, at *3 (Iowa Ct. App. Jan. 24, 2024) (citation omitted). Second, the father was required to preserve a reasonable-efforts claim below, and he failed to do so. *See In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000) ("We have repeatedly emphasized the importance for a parent to object to services early in the process so appropriate changes can be made."). And third, even if he had preserved such a claim, the lack of visitation and services was a product of the father's choices—absconding from custody and choosing prison over community corrections—rather than any misconduct or lack of effort by HHS. That said, we have also conducted an independent review of the record, and we discern no deficiencies in the services offered to the father under the facts and circumstances of the case. If the reasonable-efforts claim was properly before us, we would deny it on the merits.

## IV. Disposition

We affirm termination of the mother's rights to both children and the termination of the younger child's father's rights to that child.

**AFFIRMED ON BOTH APPEALS.**